No. 97-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 110

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WESLEY A. McKEE,

Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David E. Stenerson, Attorney at Law, Hamilton, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Tammy K. Plubell, Assistant Attorney General;
Helena, Montana

Jeffrey B. Hays, Darby Town Attorney, Hamilton, Montana

Submitted on Briefs: March 26, 1998

Decided:  May 5, 1998
Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1   Following a bench trial in Darby City Court, Wesley A. McKee was found guilty on misdemeanor charges of driving under the influence of alcohol, reckless driving, and leaving the scene of an accident. McKee appealed his conviction de novo to the Twenty-First Judicial District Court, Ravalli County.  Prior to trial, McKee filed a motion to dismiss the charges pending against him or, in the alternative, to suppress certain evidence.  The District Court denied McKee's motion, and McKee subsequently pled guilty to the three charges on which he had been convicted in Darby City Court, but reserved his right to appeal from the District Court's order denying his alternative motions. For the reasons stated below, we affirm in part and reverse in part.

¶2   McKee presents the following issues on appeal:

¶3   1.   Did the District Court err in concluding it could not act as a court of review, thereby denying McKee's motion to dismiss based on his assertion that he was denied his right to a jury trial in the Darby City Court?

¶4   2.   Did the District Court err in concluding McKee was arrested pursuant to a valid arrest warrant, thereby denying McKee's motion to dismiss the charges leveled against him or, in the alternative, to suppress certain evidence?

              FACTUAL AND PROCEDURAL BACKGROUND

¶5   Early in the afternoon on December 24, 1994, Officer Larry Rose, Marshall for the town of Darby, was dispatched to the scene of a traffic accident.  When Rose arrived at the scene, he spoke with Thomas Boe, whose parked vehicle had been sideswiped.  Boe identified McKee as the driver of the other vehicle and told Rose that McKee had appeared intoxicated.  Boe also told Rose that McKee had stated he was going home, and that he had left the scene of the accident.

¶6   Rose then drove to the McKee residence and met McKee's wife, Mitzi McKee, at the door.  Mitzi initially told Rose that her husband was not home. After Rose explained that it appeared McKee had just left the scene of an accident, Mitzi replied that McKee was inside the house washing a dog.  Rose asked Mitzi to go inside and bring McKee to the door, so Mitzi left briefly, but returned, explaining that she had been unable to find him.

¶7   Rose made several calls for backup, and learned through dispatch that Ravalli County Sheriff's Detective Pete Clarkson was responding from Hamilton.  In the meantime, Darby Mayor, Rich Higgins, and Darby resident, Keith Fisher, also heard Rose's calls, and arrived at the McKee residence to provide assistance.  Higgins and Fisher agreed to watch the McKee residence until Clarkson arrived, while Rose left to obtain a warrant.

¶8   Rose drove home, and contacted Darby Town Judge, Martha Bethel, by telephone at her home.  In their unrecorded conversation, Rose explained to

Judge Bethel that a witness had seen McKee, in an apparently intoxicated condition, leaving the scene of an accident. Rose told Judge Bethel he had proceeded to McKee's residence, and told her of his discussion with Mitzi. Judge Bethel verbally authorized the arrest, and drafted an arrest warrant on her home computer. Whether Judge Bethel physically executed the warrant, however, is unclear. In any event, Rose did not have a written arrest warrant in hand when he returned to apprehend McKee at his residence on the afternoon of December 24, 1994.

¶9   Upon receiving Judge Bethel's verbal authorization, Rose returned to the McKee residence and, without providing any documentation, informed Mitzi that the judge had issued a warrant for the arrest of her husband. In response, Mitzi permitted Rose and Clarkson to enter the home and search for McKee. Unable to locate McKee, Rose telephoned Mitzi's mother, the owner of the house, who told him of a crawl space located beneath the house. Rose found McKee hiding in the crawl space and placed him under arrest.

¶10   McKee was charged with the misdemeanor offenses of driving under the influence of alcohol (DUI), reckless driving, leaving the scene of an accident, and obstructing a peace officer. McKee appeared at his January 4, 1995, arraignment before Judge Bethel with court-appointed counsel, and entered a plea of not guilty to each of the charges leveled against him. At a May 30, 1995, omnibus hearing, the court scheduled McKee's trial for June 30, 1995. On June 5, 1995, McKee waived his right to a speedy trial. Shortly thereafter, McKee's original counsel relocated her practice, and David Stenerson became McKee's counsel of record on July 13, 1995.

¶11   McKee subsequently filed a motion to continue the trial date, and on October 6, 1995, the court ordered that McKee appear for a trial before the bench on October 11, 1995. Judge Bethel presided over McKee's bench trial and, on October 11, 1995, convicted McKee of DUI, reckless driving, and leaving the scene of an accident. On October 16, 1995, McKee filed a notice of appeal, requesting a trial de novo in the district court.

¶12   The District Court scheduled a jury trial for April 11, 1996, and on February 12, 1996, McKee filed a motion to dismiss the charges against him or, in the alternative, to suppress certain evidence. The District Court denied McKee's alternative motions by way of a May 22, 1996, order. McKee subsequently pled guilty to the offenses of DUI, reckless driving, and leaving the scene of an accident, but reserved his right to appeal the court's adverse ruling on his motion to dismiss and alternative motion to suppress. The District Court sentenced McKee to the terms previously imposed by the Darby City Court, ordering that McKee serve sixty days in jail with fifty-nine suspended for the DUI conviction, ten days in jail with nine suspended for the conviction of leaving the scene of a traffic accident, and ninety days in jail with eighty-nine suspended for the conviction of reckless driving. McKee filed his notice of appeal on July 19, 1996.

DISCUSSION

¶13   A district court's decision to grant or deny a motion to dismiss in a

criminal case involves a question of law which we review de novo to determine whether the court's interpretation of the law is correct. State v. Nye (1997), 283 Mont. 505, 509, 943 P.2d 96, 99.

¶14  We review a district court's decision denying a motion to suppress to determine whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. State v. Woods (1997), 283 Mont. 359, 359, 942 P.2d 88, 93.

ISSUE 1

¶15  Did the District Court err in concluding it could not act as a court of review, thereby denying McKee's motion to dismiss based on his assertion that he was denied his right to a jury trial in the Darby City Court?

¶16  On appeal, McKee asserts he never waived his right to a trial by jury, and contends he acquiesced to a bench trial in Darby City Court "only after it became apparent that the Court was determined to proceed and that it would be in his best interest" to do so. Asserting he "was effectively forced into trial before the Bench without a verifiable waiver of [his] right" to a trial by jury, McKee asserts "his constitutional rights to due process of law were violated" and the District Court thus erred in denying his motion to dismiss.

¶17  In response, the State concedes there exists "no written record to demonstrate [that McKee] waived his right to a jury trial in justice court," but disputes McKee's assertion that Judge Bethel "compelled" him to proceed with a bench trial. The State instead asserts that McKee's verbal agreement to proceed with a bench trial constitutes a valid waiver. Even assuming McKee did not properly waive his statutory right to a jury trial, the State asserts his exclusive remedy was an appeal to the District Court for a trial de novo.

¶18  We have recognized that, with few exceptions, "a defendant's exclusive remedy for a conviction in justice court is an appeal to the district court for a trial de novo." State v. Barker (1993), 260 Mont. 85, 91, 858 P.2d 360, 363. On an appeal from justice court, the district court does not "sit as a court of review, but tries the cause de novo." City of Billings v. McCarvel (1993), 262 Mont. 96, 101, 863 P.2d 441, 444 (quoting State v. O'Brien (1907), 35 Mont. 482, 491, 90 P. 514, 516-17). An appeal to the district court thus provides a defendant with the opportunity to have a trial de novo, thereby curing whatever prejudice may have resulted in city court. See, e.g., McCarvel, 262 Mont. at 101, 863 P.2d at 445.

¶19  Similarly, in the present case, the District Court was not sitting as a court of review, but was responsible for providing McKee with a de novo trial. Had McKee chosen to proceed to trial before the District Court, the trial would have cured any prejudice he suffered when "compelled" to proceed with a bench trial in city court. That McKee chose to forego a new trial and instead pled guilty to the charges against him, does not alter the fact that his exclusive remedy in this case was a de novo trial. Based on the foregoing, we hold the District Court properly denied McKee's motion to dismiss, and correctly concluded that "any jury trial right violation was statutory in nature and is

remedied by trial de novo before a jury in this court."

                              ISSUE 2

¶20  Did the District Court err in concluding McKee was arrested pursuant
to a valid arrest warrant, thereby denying McKee's motion to dismiss the
charges leveled against him or, in the alternative, to suppress certain evidence?

¶21  In its order denying McKee's motion to dismiss and alternative motion
to suppress certain evidence, the District Court determined that McKee had
been arrested pursuant to a valid arrest warrant.  In so holding, the District
Court concluded "that Judge Bethel had adequate grounds to issue an arrest
warrant," and held "[t]he fact that she has only produced an unsigned warrant
for this hearing is not deemed to be of such significance that it affects the
substantial rights of the accused in this case, § 46-6-204, MCA, particularly
where the warrant was issued upon probable cause and met all other statutory
requirements."

¶22  On appeal, McKee first argues the warrant pursuant to which he was
arrested violated select provisions of § 46-6-214(1), MCA, and that the
District Court thus erred in upholding its validity and the legality of his
arrest.
More specifically, McKee argues the warrant approved telephonically by
Judge Bethel violated § 46-6-214(1)(a), MCA, which requires an arrest
warrant to "be in writing in the name of the state of Montana or in the name
of a municipality if a violation of a municipal ordinance is charged," as well
as § 46-6-214(1)(f), MCA, which mandates that an arrest warrant "be signed
by the judge of the court with the title of office noted."  McKee notes that,
although Judge Bethel verbally approved Rose's request for an arrest warrant
and apparently drafted a warrant on her home computer, she did not provide
Rose with a signed or written copy.  In the absence of a signed and written
warrant, McKee argues that both his arrest and the related search of his home
were illegal.  Based on the foregoing, McKee argues the District Court erred
in denying his alternative motions to dismiss and to suppress, and asserts this
Court ought to order the charges against him be dismissed.  In the alternative,
McKee asks that this Court order the suppression of all evidence gained after
the alleged illegal entry into McKee's home.

¶23  The State, in contrast, asserts the District Court correctly concluded that
the arrest warrant in this case was valid.  Conceding that there exists no statute
in Montana explicitly authorizing telephonic arrest warrants, the State
nevertheless argues the warrant in this case was valid because it complied with
the substantive mandates of § 46-6-214(1), MCA.  For instance, the State
argues the warrant was based on probable cause, was supported by an oath,
and particularly described the person to be seized. Pointing to the case of State
v. Andries (Minn. 1980), 297 N.W.2d 124, the State asserts the statutory
requirement that the warrant "be signed by the judge of the court with the title
of office noted" amounts to nothing more than a ministerial task, and that
Judge Bethel's failure to sign the warrant at issue did not affect its validity.

¶24  In Andries, the Minnesota Supreme Court upheld the validity of a

search warrant "authorized over the telephone by a judge who fully complied with the requirements of the relevant statutes except that he did not personally sign the warrant but instead delegated that ministerial act to the applicant." Andries, 297 N.W.2d at 125. In that case, a county attorney with probable cause to believe that marijuana would be found at a certain residence, sought telephone authorization for a search warrant from a judge located eighty-five miles away. Andries, 297 N.W.2d at 125. The judge convened a three-way conference call with the county attorney and the deputy sheriff involved in the case, during which the deputy sheriff signed and read an affidavit prepared by the county attorney, and read a proposed warrant. Andries, 297 N.W.2d at 125. The judge determined there was probable cause upon which to base a search warrant, and "delegated to the deputy the task of signing the judge's name to the warrant." Andries, 297 N.W.2d at 125. In upholding the warrant's validity despite the absence of a statute explicitly authorizing telephonic search warrants, the court in Andries cautioned that it did "not mean to sanction the indiscriminate use of such a procedure," but noted that under the circumstances of that case "there was a demonstrated need for such a warrant, the procedures specified in the statute were substantially followed, and a record was made which was thereafter available for use by defendant in challenging the issuance of the warrant." Andries, 297 N.W.2d at 125-26.

¶25 Under the circumstances present in this case, we decline the State's invitation to follow the Minnesota Supreme Court's decision in Andries and to declare the statutory requirement that the authorizing judge sign an arrest warrant an inconsequential, ministerial task. Section 46-6-214(1), MCA, clearly mandates that an arrest warrant "be in writing" and "be signed by the judge" by whom it is issued. It is undisputed that, for whatever reason, Judge Bethel never signed the warrant she drafted for McKee's arrest. Moreover, although the District Court record in this case does contain a copy of the unsigned warrant, presumably drafted and dated by Judge Bethel on the afternoon of December 24, 1994, whether the warrant was actually in writing at the time of McKee's arrest is unclear.

¶26 Furthermore, in light of the fact that two individuals agreed to stand guard over the McKee residence in Officer Rose's absence, and in light of the relatively short distance between Officer Rose's location and Judge Bethel's residence, we conclude the State has failed to adequately demonstrate its need for the immediate issuance of a telephonic arrest warrant. Finally, we note that the conversation between Officer Rose and Judge Bethel, and upon which Judge Bethel relied in authorizing McKee's arrest, was not recorded. Thus, although Judge Bethel documented the facts upon which she made her probable cause determination, there exists no electronic recording upon which McKee may rely in challenging the warrant at issue. Based on the foregoing, we hold the District Court erred in concluding that McKee was arrested pursuant to a valid arrest warrant.

¶27 Having so held, we must next determine whether the appropriate remedy lies in a dismissal of all charges, or the suppression of any evidence seized after the illegal arrest. We have recognized that the appropriate course of action in the event of an illegal arrest is not to dismiss all charges, but to

suppress all evidence seized or otherwise gained as a result of the arrest. See, e.g., State v. Hendrickson (1997), 238 Mont. 105, 112, 939 P.2d 985, 989; State v. Whalen (1990), 242 Mont. 293, 298, 790 P.2d 471, 475 (concluding that, where an arrest is illegal, "all evidence against defendant seized as a result of such arrest is inadmissible."); State v. Ellinger (1986), 223 Mont. 349, 356, 725 P.2d 1201, 1205 (recognizing that "an unlawful arrest has no impact on subsequent prosecution" and that such an arrest does not prevent the State from proceeding with criminal charges). Accordingly, the appropriate remedy in the instant case is for the court to suppress all evidence gained as a result of the invalid arrest warrant.

¶28  Based on the foregoing, we conclude that although the court did not err in denying McKee's motion to dismiss, it did err in denying his motion to suppress all evidence gained as a result of the invalid arrest warrant.

¶29  Reversed and remanded for further proceedings consistent with this opinion.

/S/  JIM REGNIER


We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER