# FILED

August 19 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0816

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 295

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TAD RUSSELL TORGESON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-06-4
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, McLaverty & Associates, Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Attorney General; Tammy K. Plubell, Assistant
Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney; Jennifer Clark, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  September 6, 2007

Decided:  August 19, 2008

Filed:

_____
                               Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Tad Russell Torgeson appeals from an order entered in the Montana Fourth Judicial District, Missoula County, denying his Motion to Dismiss or, in the Alternative, to Suppress Evidence.

¶2     Torgeson lists three issues on appeal. However, any reversal of the District Court judgment depends on whether Torgeson was arrested pursuant to an invalid arrest warrant. His brief, in substance, addresses only that issue.

¶3     On October 21, 2005, law enforcement executed a search warrant on a mobile home in Mineral County that Torgeson occupied. The officers found chemicals, various containers, and other tools consistent with a laboratory to synthesize methamphetamine. The State charged Torgeson with operation of an unlawful clandestine laboratory in the Mineral County District Court. The Mineral County District Court issued a warrant for Torgeson's arrest. However, the warrant incorrectly named the offense that Torgeson was charged with as violation of bail conditions, rather than operation of an unlawful clandestine laboratory.

¶4     On December 14, 2005, Missoula County Sheriff's Office Detective Scott Newell received information that Torgeson was then living in a mobile home located in the 300 block of Colorado Avenue in East Missoula, he drove either a red Jeep or a blue Chevrolet, and was operating a methamphetamine laboratory at his residence. Having been involved in the previous Mineral County investigation of Torgeson, Detective Newell knew of the charges against him that were pending in Mineral County. To verify the status of the Mineral County proceedings Detective Newell contacted Mineral County authorities. The authorities confirmed that Torgeson had been charged with operation of an unlawful

2

clandestine laboratory and that a warrant for his arrest had been issued. Detective Newell also had a dispatcher check the computerized Criminal Justice Information Network, and was told that there was an outstanding warrant for Torgeson's arrest on charges of operation of an unlawful clandestine laboratory in the system.

¶5 On December 15, 2005, Missoula County Sheriff's Deputies went to the East Missoula address to try to arrest Torgeson. The first deputy on the scene, Deputy Conway, had been informed that there was an outstanding arrest warrant for Torgeson on a charge of manufacturing dangerous drugs, Torgeson would likely be driving a red Jeep or a blue Chevrolet, and narcotics detectives believed Torgeson operated a methamphetamine laboratory in the East Missoula mobile home. Upon his arrival, Deputy Conway saw a red Jeep parked at a mobile home in the correct location, and also saw a blue Chevrolet approaching. The driver of the Chevrolet drove toward the mobile home where it was suspected that Torgeson cooked methamphetamine.

¶6 Deputy Conway saw the blue Chevrolet park near the mobile home with the red Jeep in front of it, and saw a female get out of the car on the driver's side and walk toward the front of the mobile home, which faced away from Deputy Conway. As she did not return, Deputy Conway assumed she entered the mobile home.

¶7 Soon thereafter Deputy Gunter arrived. Both he and Deputy Conway went to the mobile home and knocked on the door. Deputy Conway saw the curtains move, the windows shut, and heard the door lock. The Deputies continued knocking. Eventually, Dennis Whitaker and Torgeson opened the door and stood in the doorway. Deputy Conway

3

recognized Torgeson, and also detected a strong chemical odor coming from inside the mobile home, which he knew from experience was associated with methamphetamine laboratories. Deputy Conway placed Torgeson under arrest based on the Mineral County warrant.

¶8 Whitaker then volunteered to Deputy Conway that he thought Torgeson operated a methamphetamine lab in his bedroom because he had seen the necessary chemicals, glassware, and a heat source.

¶9 Around this time, Deputies Meader and White arrived at the mobile home. Deputy Meader stood at the entrance and yelled into the mobile home for any other occupants to exit. The deputies repeatedly asked Torgeson and Whitaker if anyone remained in the mobile home. They did not give a definitive response. Eventually another male, Timothy Carter, came out of the mobile home. The female who Conway suspected had entered the mobile home did not come out.

¶10 Based upon the strong chemical odor coming from the mobile home, Whitaker's disclosure that he believed Torgeson operated a methamphetamine lab in his bedroom, the fact that they believed the female was still in the mobile home, and because Torgeson and Whitaker had been equivocal about anyone else remaining inside the mobile home the officers were concerned about destruction of evidence and their own safety. Deputy Conway entered the mobile home and performed a cursory search to make certain no one remained. During the sweep, Deputy Conway found no one else inside. But, he saw, in plain view, what he believed to be a methamphetamine laboratory.

4

¶11 In the meantime, the *Miranda* warnings were read to Torgeson by the Sheriff's deputies.[1] Sergeant Ruguleiski arrived, and after being informed that Torgeson had been given the *Miranda* warnings, questioned him. Torgeson admitted that he had a red phosphorous methamphetamine cooking operation in his bedroom and that there were possibly needles and syringes in his bedroom.

¶12 Later that day, Detective Newell applied for and received a warrant to search the mobile home. During the search of the mobile home officers seized numerous items consistent with the manufacture of methamphetamine including chemicals, tubing, a propane torch, a heating element, bottles of liquid, filters, iodine, match striker plates, torn match books, muriatic acid, and crystalline material.

¶13 On January 4, 2006, the Missoula County Attorney's Office filed an Information charging Torgeson with operation of an unlawful clandestine laboratory in violation of § 45-9-132(3), MCA. Torgeson pled not guilty, and the District Court appointed counsel to represent him.

¶14 On March 6, 2006, Torgeson filed the motion to dismiss or to suppress evidence that is at issue in this appeal. Torgeson claimed that because his arrest had been based upon an invalid arrest warrant any evidence discovered and seized as a result of his arrest should be

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d. 694 (1966); *State v. Munson*, 2007 MT 222, ¶ 20, 339 Mont. 68, ¶ 20, 169 P.3d 364, ¶ 20.

suppressed. On June 12, 2006, the District Court entered an Order and Memorandum denying Torgeson's motion to dismiss or suppress.[2]

¶15 The District Court concluded that, pursuant to § 46-6-210, MCA, a law enforcement officer may arrest a person when the officer has reasonable grounds to believe that a warrant for that person's arrest has been issued. The District Court observed that there is no requirement that the officer be in physical possession of a copy of the warrant prior to an actual arrest. The District Court thus held that because Deputy Conway, the arresting officer, had reasonable grounds to believe that a valid warrant for the arrest of Torgeson was outstanding, he acted in good faith when he arrested him. The District Court noted that independent probable cause also supported Torgeson's arrest.

¶16 Torgeson pled guilty to operation of an unlawful clandestine laboratory, reserving his right to appeal the District Court's denial of his motion to dismiss or suppress. On November 9, 2006, the District Court entered a judgment committing Torgeson to the Department of Corrections for 15 years with 10 years suspended. Torgeson now appeals the District Court's denial of his motion to dismiss or suppress.

¶17 This Court reviews a district court's ruling on a suppression motion to determine if the court's findings of fact are clearly erroneous, and whether those findings were applied correctly as a matter of law. *State v. Weaselboy*, 1999 MT 274, ¶ 6, 296 Mont. 503, ¶ 6, 989 P.2d 836, ¶ 6. When considering a motion to dismiss in a criminal case, this Court's

---

[2] The District Court did order that a pipe found on Torgeson's person after his arrest would be suppressed.

6

standard of review is *de novo*. *State v. Bateman*, 2004 MT 281, ¶ 12, 323 Mont. 280, ¶ 12, 99 P.3d 656, ¶ 12.

¶18    Section 46-6-214(1)(b), MCA, provides that "[a]n arrest warrant must . . . set forth the nature of the offense." As noted above, following Torgeson's arrest in Mineral County in October, 2005, he was charged with the offense of operation of an unlawful clandestine laboratory. However, the corresponding arrest warrant listed the charged offense as violation of bail conditions. Based on the incorrect description of the charge underlying the warrant, Torgeson argues that his December, 2005, arrest in East Missoula, and the related search of his home, were illegal and thus the judgment of the District Court must be reversed.

¶19    Section 46-6-210(1), MCA, provides that a peace officer may arrest a person when he believes on reasonable grounds that a warrant for the person's arrest has been issued. Section 46-6-204, MCA, provides:

> No warrant of arrest shall be dismissed nor shall any person in custody for an offense be discharged from such custody because of technical irregularities not affecting the substantial rights of the accused.

The official Montana Criminal Code Commission comment to § 46-6-204, MCA, states:

> This section is consistent with the idea expressed throughout the code that a ministerial error should not be the basis for defeating the law. Only when the defendant's substantial rights have been prejudiced should the warrant be dismissed.

¶20    Torgeson describes no substantial right of his that was prejudiced by the erroneous statement in the Mineral County warrant that he was charged with violation of bail conditions. His argument is based primarily on *State v. McKee*, 1998 MT 110, 288 Mont.

7

454, 958 P.2d 700. In *McKee*, a motorist reported to the Darby Town Marshall that McKee had sideswiped his car, appeared intoxicated, and had left the scene saying he was going home. The Marshall went to McKee's house where his wife answered the door and told contradictory stories about McKee's whereabouts. The Marshall had the town mayor and a resident watch the house while he went to obtain an arrest warrant for McKee. He contacted the Darby City Judge by telephone and explained the situation. The judge verbally authorized the arrest, and testified later that she drafted an arrest warrant on her computer. However, it was unclear whether the Judge signed the warrant. After returning to McKee's residence without an arrest warrant in hand, the Marshall informed McKee's wife that the judge had issued a warrant for the arrest of her husband. McKee's wife then allowed the Marshall into the residence where he ultimately arrested McKee after finding him hiding in a crawl space.

¶21     The *McKee* Court concluded that under the circumstances the requirements that an arrest warrant be in writing and that the issuing judge sign it, were not inconsequential, ministerial acts, and thus McKee was not arrested pursuant to a valid warrant. The Court reasoned that the purported warrant was not valid because the record did not disclose whether the warrant was in writing and signed by the judge at the time of McKee's arrest; a telephone warrant was not justified because the residence where McKee was hiding was being guarded; the Marshall sought the warrant from a judge who was only a short distance away; and there was no electronic recording upon which McKee could rely in challenging the warrant. *McKee*, ¶¶ 25-26.

8

¶22 The facts in this case are different from those of *McKee*. Here, the Mineral County warrant, while it did list the wrong offense, was in writing and signed by a district judge; was based on an existing felony charge of operating an unlawful clandestine laboratory; and the name of the person to be arrested, the date of the charge, and the amount of bail were all correctly stated in writing. Also, a complete record of the proceedings leading to the issuance of the warrant existed. Torgeson could rely on this record in any challenge to the warrant. We conclude that *McKee* is distinguishable from the facts presented in this case, and the irregularity in the Mineral County warrant for Torgeson's arrest did not affect his substantial rights. Under these circumstances Torgeson was arrested pursuant to a valid warrant.

¶23 As Torgeson was arrested pursuant to a valid warrant, the District Court did not err in denying his motion to suppress the statements he made to law enforcement after he had been given the *Miranda* warnings. These statements led to the discovery of the methamphetamine laboratory Torgeson operated in East Missoula and inevitably to his conviction in this case.

¶24 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

/S/ JIM RICE