No. 03-851

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 281

STATE OF MONTANA,

Plaintiff and Respondent,

v.

THOMAS LEE BATEMAN,

Defendant and Appellant.

APPEAL FROM:     The District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone, Cause No. DC 2003-0069,
                 Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Helena, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
            Assistant Attorney General, Helena, Montana

            Dennis Paxinos, County Attorney, Billings, Montana

                         Submitted on Briefs:  September 9, 2004

                                 Decided:  October 14, 2004

Filed:

        _____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Thomas Bateman appeals from his conviction and sentence in the Thirteenth Judicial District Court, Yellowstone County.  We affirm.

¶2     We restate the issues on appeal as:

¶3     1.  Was Bateman's arrest based on a reasonable mistake?

¶4     2.  Was Bateman's right to privacy violated?

¶5     3.  Did Bateman receive ineffective assistance of counsel?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6     On January 16, 2003, the Billings Police Department dispatched Officer Korell to a building in Billings.  The building housed two apartments, one where the owner lived, and one where her tenant, Bateman, lived.  It appears that the owner had asked the police to come talk to her regarding Bateman.  Korell asked the owner if she noticed anything strange about Bateman and his apartment and she said that the blinds were always drawn, the windows were always closed, the air conditioning was on at odd times, and there was an unusual smell.  Korell learned that the tenant of the apartment was one "Thomas Bateman," and the owner provided the officer with his physical description and approximate age.

¶7     Korell immediately radioed in for an outstanding warrant check on "Thomas Bateman."  The dispatcher found that "Thomas Bateman" had an outstanding warrant for misdemeanor possession of drugs. The dispatcher provided Korell with the age and physical description of the person in the warrant, and it matched what the apartment owner had told him.  Korell did not inquire what the person's middle name was, but later testified that the

2

warrant probably did include a middle name. After knocking on Bateman's door and not receiving an answer, Korell, accompanied by another officer, returned to Bateman's residence the next day. After the officer knocked, Bateman opened the door and Korell asked him if he was "Thomas Bateman," to which Bateman replied "yes."

¶8     At this point Korell noticed that Bateman was trying to conceal something behind his back. To ensure the officers' safety, and in keeping with standard police procedure, Korell told Bateman they had a warrant for his arrest and attempted to handcuff him. Bateman dropped a bag of Gummy Bears and what appeared to be a marijuana pipe. He then told the officers that there was another "Thomas Bateman" and that there had been police confusion regarding them in the past. The officers checked Bateman's I.D., radioed to dispatch, and determined that Defendant indeed was a different "Thomas Bateman." Although their age and physical description were quite similar, they had different social security numbers and dates of birth.

¶9     However, at this point the officers had probable cause to arrest Bateman. They had seen him drop the marijuana pipe and, while standing with him in his doorway, had seen other drug paraphernalia in his living room. One officer also detected a strong odor of smoke. The officers asked Bateman if anyone else was in the apartment and he responded that he did not think there was. The officers also heard a voice coming from the kitchen, so one officer walked into the kitchen, which was covered in smoke and soot, and found another man who, it turns out, did have an outstanding arrest warrant. The officers then administered a security check and sought permission from Bateman to search the apartment. Bateman at

first refused and then changed his mind. Nonetheless, the officers applied for, and received, a search warrant. They subsequently found a methamphetamine lab in the apartment crawl space.

¶10 Bateman was charged with eight different offenses, including Criminal Production or Manufacture of Dangerous Drugs, and Operation of an Unlawful Laboratory. Four of the charges were felonies and four were misdemeanors. After pleading not guilty to all charges, Bateman moved that the charges be dismissed, arguing that the evidence against him resulted from an illegal arrest. His motion was denied, and he subsequently entered into a plea agreement whereby he pled guilty to all charges in exchange for a ten-year prison sentence. The agreement preserved his right to appeal any pretrial rulings.

¶11 Bateman now challenges that sentence, arguing the evidence should be excluded due to an arrest that was illegal under the Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution. In the alternative, Bateman argues that he received ineffective assistance of counsel.

**STANDARD OF REVIEW**

¶12 When considering a motion to dismiss in a criminal case our standard of review is *de novo*. *State v. Wolfe*, 2003 MT 222, ¶ 4, 317 Mont. 173, ¶ 4, 75 P.3d 1271, ¶ 4. Our standard is plenary, and we review to determine whether the district court's conclusion is correct. *State v. Adgerson*, 2003 MT 284, ¶ 24, 318 Mont. 22, ¶ 24, 78 P.3d 850, ¶ 24.

4

**DISCUSSION**

**ISSUE ONE**

¶13 *Was Bateman's arrest based on a reasonable mistake?*

¶14 Bateman argues that his arrest was illegal as he was not actually the "Thomas Bateman" specified in the arrest warrant. Therefore, he continues, the evidence obtained in the subsequent search cannot be proffered against him, and the charges against him must be dismissed. When arresting a person in his own home, the government is required to obtain a warrant specific to that person. U.S. Const. amend. IV ("[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, *particularly describing* the place to be searched, and *the persons* or things *to be seized*.") (emphasis added); *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."). In this case, because the authorities had not issued a warrant for the "Thomas Bateman" whom they arrested, they arrested him without a valid warrant. However, because there are exceptions to the warrant requirement, this does not necessarily mean that Bateman's arrest was illegal.

¶15 A very similar issue arose in *Hill v. California* (1971), 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484. In *Hill* the police had probable cause to arrest the defendant, and therefore lawfully entered his residence hoping to make the arrest. *Hill*, 401 U.S. at 802-03, 91 S.Ct. at 1110, 28 L.Ed.2d at 489. There they found a man, Miller, who matched Hill's physical description, and therefore arrested him. *Hill*, 401 U.S. at 803-04, 91 S.Ct. at 1110, 28

5

L.Ed.2d at 489. In arresting him they found evidence in plain view incriminating Hill. *Hill*, 401 U.S. at 803, 91 S.Ct. at 1110, 28 L.Ed.2d at 489. The Court stated that because the police reasonably believed that Miller was Hill, their arrest was reasonable and so was the accompanying search. *Hill*, 401 U.S. at 804, 91 S.Ct. at 1111, 28 L.Ed.2d at 490 ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.").

¶16    *Hill* did not involve a warrant. However, the case did involve an arrest based on a reasonable mistake of identity that led to an otherwise unquestionably legal acquisition of evidence. This Court has not examined a *Hill* question before, but several other courts have found *Hill* applicable when the police mistakenly arrest a person because his name and other characteristics are the same as those on the arrest warrant. *Hill v. Scott* (8th Cir. 2003), 349 F.3d 1068, 1073-74; *Rodriguez v. Farrell* (11th Cir. 2002), 280 F.3d 1341,1347-48 (stating that similarities in name and physical description were close enough to make for a reasonable mistake); *Blackwell v. Barton* (5th Cir. 1994), 34 F.3d 298, 304 ("The person he arrested was of the same height and weight, sex, race, age, nickname, and at the location where [the officer] expected to find" the person in the warrant); *Patton v. Przybylski* (7th Cir. 1987), 822 F.2d 697, 698-700 (holding as reasonable the arrest of a person with the same name, race, and age as that on an outstanding arrest warrant). Courts have ruled against the authorities in mistaken identity cases where there has been deliberate warrant tampering or where there was no correlation other than the persons' names. *Brown v. Byer* (5th Cir.

6

1989), 870 F.2d 975, 978-79 (sustaining a jury finding that an officer altered identifying information on the warrant); *Simons v. Marin County* (N.D. Cal. 1987), 682 F.Supp. 1463. In *Simons*, the authorities had evidence that the arrestee and the person on the warrant had different middle names, different ages, and residences in different areas of California. *Simons*, 682 F.Supp. at 1466-67. Because the authorities went ahead with the arrest even in the face of this evidence, the court ruled that the arrest was not based on a reasonable mistake.

¶17 In this case, however, the officers had evidence that Bateman and the "Bateman" on the outstanding warrant had similar ages, lived in the same area, and had similar physical characteristics. Unlike in *Simons*, the officers quickly sought to verify whether Bateman's protests regarding mistaken identity were true. It appears that the two Batemans had different middle names, but the officers were not aware of that fact ahead of time. In such circumstances, where all other indications point toward a congruence of the arrestee and the person described in the warrant, we cannot expect police officers to verify every detail that might reveal mistaken identity prior to confronting the suspect. The Eighth Circuit recently reached the same conclusion in *Hill v. Scott*, 349 F.3d 1068. In that case, an officer radioed a dispatcher and asked if there were any warrants for a "Brian Hill." *Hill v. Scott*, 349 F.3d at 1070. The dispatcher said there was one for a "Brian Walter Hill" and the physical description and age of the "Brian Walter Hill" matched that of the "Brian Hill" the officer was investigating. The officer did not know the middle name of the "Brian Hill" whom he wanted to arrest, but the court ruled that investigation of such a level of detail was not

constitutionally necessary before the arrest. *Hill v. Scott*, 349 F.3d at 1074 ("The question is, how much investigation does the Constitution require? In light of all the circumstances, we hold [the officer] had sufficient consistent identifying information to reasonably conclude the warrant was for appellant Hill . . . .").

¶18    Therefore, in light of *Hill v. California* (1971), 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484, and its progeny, we hold that the officers in the instant case acted reasonably, albeit mistakenly, in arresting Bateman. Because the arrest was reasonable, the subsequent discovery of incriminating evidence was legal and the evidence is thus admissible.

## ISSUE TWO

¶19    *Was Bateman's right to privacy violated?*

¶20    Bateman also argues that the search of his residence was a violation of his right to privacy, guaranteed by Article II, Section 10, of the Montana Constitution. However, Bateman failed to raise this claim in the District Court. Therefore, as is the rule in this Court, he may not raise the claim on appeal. *State v. Weaselboy*, 1999 MT 274, ¶ 16, 296 Mont. 503, ¶ 16, 989 P.2d 836, ¶ 16. Bateman implicitly asks that we apply the "plain error" exception to this rule, namely that we may review a claim notwithstanding it being raised for the first time on appeal if "failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, ¶ 22, 95 P.3d 166, ¶ 22 (citing *State v. Finley*

8

(1996), 276 Mont. 126, 137, 915 P.2d 208, 215).  Bateman's state right to privacy claim does not rise to this level.  Therefore, we decline to address the privacy issue.

<b>ISSUE THREE</b>

¶21     *Did Bateman receive ineffective assistance of counsel?*

¶22     Bateman claims that his trial counsel provided ineffective assistance of counsel when he advised Bateman to plead guilty and accept a ten-year prison sentence.  The right to effective assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution and by Article II, Section 24, of the Montana Constitution.

¶23     When addressing an ineffective assistance of counsel claim on appeal, this Court makes a distinction between claims that are record-based and those that are non-record-based.  "If the record does not supply the reason for counsel's act or omission, the claim must be raised by petition for post-conviction relief."  *State v. Turnsplenty*, 2003 MT 159, ¶ 17, 316 Mont. 275, ¶ 17, 70 P.3d 1234, ¶ 17 (quoting *State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21).  We will not hold that an attorney's actions were ineffective if they were tactical.  If we cannot ascertain from the record whether or not counsel's actions were tactical, our standard procedure is to dismiss an appellant's claim without prejudice and allow him to file a petition for postconviction relief in the District Court.  *Turnsplenty*, ¶ 16 (citing *State v. Herrman*, 2003 MT 149, ¶ 33, 316 Mont. 198, ¶ 33, 70 P.3d 738, ¶ 33).

¶24     Bateman acknowledges that the record does not discuss why his trial counsel advised him to enter into his plea agreement.  However, he asks that we conclude that his trial counsel's decision was one that has no possible justification, and therefore falls within an

exception to the record/non-record distinction. *See, e.g.*, *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, ¶ 50, 69 P.3d 641, ¶ 50 (determining there was no plausible justification for trial counsel to concede to the jury that defendant was guilty of a lesser charge); *State v. Rose*, 1998 MT 342, ¶ 20, 292 Mont. 350, ¶ 20, 972 P.2d 321, ¶ 20. This argument fails. Bateman was charged with eight counts, four of which were felonies. If a jury had found him guilty of Criminal Production or Manufacture of Dangerous Drugs, his maximum penalty would have been a life sentence. Another charge, Operation of an Unlawful Laboratory, carries a maximum twenty-five-year sentence. With these possible sentences in mind, and without further evidence drawn from outside the record, we cannot conclude that there was no plausible justification for his trial counsel to recommend plea-bargaining for a ten year sentence. Therefore we dismiss this claim without prejudice.

## CONCLUSION

¶25 For the foregoing reasons Bateman's conviction and sentence are affirmed.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE


10