No. 04-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

FRANZ NOVAK,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and for the County of Teton, Cause No. 01-DC-019,
The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Jeffry L. Olson, Attorney at Law, Great Falls, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

        Joe Coble, Teton County Attorney; Choteau, Montana

Submitted on Briefs: September 28, 2005

Decided:

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Franz Novak (Novak) appeals his convictions from the District Court of the Ninth Judicial District, Teton County, for sexual assault, a felony in violation of § 45-5-502(3), MCA, and sexual intercourse without consent, a felony in violation of § 45-5-503(3), MCA. We affirm.

¶2    Novak raises the following four issues on appeal:

¶3    1.  Whether the performance of Novak's counsel denied him effective assistance at trial.

¶4    2.  Whether the District Court abused its discretion in denying Novak's motion for a mistrial.

¶5    3.  Whether this Court should apply the plain error doctrine to review Novak's claims on appeal.

¶6    4.  Whether the cumulative error doctrine entitles Novak to a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

¶7    The Teton County Sheriff's Office received a letter in March of 2001 from Elizabeth Wyss (Elizabeth), a 21-year-old college student in Bozeman.  In this letter, Elizabeth complained that Novak had coerced her into signing over her house to him through threats, physical assaults, and fraud.  Elizabeth also alleged that Novak began a sexual relationship with her when she was only 14 years old.  The letter prompted the Teton County Sheriff's Office to conduct an investigation.

¶8    The investigating deputy sheriff interviewed Elizabeth, her mother Pat Wyss (Pat), and Novak about the allegations in Elizabeth's letter.  Novak provided a video-taped

2

statement in which he characterized his relationship with Elizabeth as a pure "father-daughter" relationship. He initially denied ever having sex with Elizabeth. Later in the interview, however, he admitted to having sex with her after she turned 18. He denied having any sexual interest in Elizabeth before that time. Following the investigation the State charged Novak with one count of felony sexual assault, one count of felony sexual intercourse without consent, one count of misdemeanor partner or family member assault, and one count of felony theft.

¶9 Two court-appointed attorneys represented Novak at trial. The District Court dismissed the misdemeanor partner or family member assault and felony theft charges on the first day of trial. In its preliminary instruction to the jury, the District Court stated that the charges set forth in the Information were "all alleged to have occurred between May, 1994, and May, 2000 . . . ." Elizabeth turned 16 on June 4, 1995. Thus no events after that date related to Novak's remaining charges, as the State premised the sexual assault and sexual intercourse without consent charges on Elizabeth's inability to consent when she was under the age of 16. Sections 45-5-502(3) and 503(3), MCA.

¶10 Elizabeth testified that she first met Novak in December of 1993, when she was 14 years old. Novak, a 41-year-old ski instructor at the time, began dating Elizabeth's mother, Pat, following the death of Elizabeth's father in February of 1993. Novak soon moved into the Wyss home in Fairfield. Even though the relationship between Pat and Novak ended in May of 1994, Novak remained in the family home, working on the construction of a deck and acting as a father figure to Elizabeth and her brother.

¶11 Elizabeth further testified that Novak had started a sexual relationship with her shortly

before her graduation from eighth grade, when she was only 14 years old. Novak continued to have sex with Elizabeth on a regular basis over the next seven years. In January of 1998, Novak got into a heated argument with Elizabeth's younger brother. Pat demanded that Novak move out. Elizabeth joined him, and the two moved into a house in Choteau that Elizabeth inherited from her grandmother. Novak did some repairs on the house, and eventually persuaded Elizabeth to sign the title over to him through alleged threats, physical abuse, and fraud.

¶12 The State admitted testimony, through various witnesses, of Novak's controlling personality. Novak's counsel objected to some, but not all, of this testimony. The District Court met with counsel in chambers on the second day of trial to express its concern about some of the State's evidence. The court voiced particular concern with the relevance of testimony regarding Novak's controlling personality. The State insisted the evidence demonstrated why Elizabeth did not report the sexual relationship sooner. Novak's counsel informed the court that they were concerned with Novak's assertion during the video-taped interview with the Teton County deputy sheriff that he first had sex with Elizabeth when she was 18 years old. His counsel believed that this assertion placed Novak's entire relationship with Elizabeth at issue, and that the State would be able to rebut Novak's assertion with evidence of his control over Elizabeth. Novak's counsel explained that they preferred this evidence to come in during the State's case-in-chief rather than through rebuttal witnesses following Novak's testimony.

¶13 The State made several inflammatory remarks in its rebuttal closing statement, including the following:

4

At what point does a father decide that now, okay, his girl is ready for him to have sex with her? . . . I suggest to you that the fact that he told you that it wasn't until she was 18 that he began to have sex with his daughter was of no importance whatsoever, and he sat right there on that witness stand and told you things that you know are not true. If he were to tell you things of that nature, which are so clearly not true, why, oh why would he not be dishonest about the age that he started to put that little girl through his grinder?

. . . .

[N]ews reports are replete with examples of people under the control of someone who is charismatic and manipulative and do things to us that are inexplicable, it happens all the time. Just think about it, think about Jonestown, how do you explain that? This Defendant was able to manipulate and control a weak and vulnerable family. He preyed on them.

. . . .

Think about some of the reports with clergy members in the papers. It's not unusual that a girl is a victim of that man, and I'm not asking you to fix it, I'm asking you to hold him responsible. . . . I'm asking you to hold him responsible for tearing that family apart.

¶14 Novak moved for a mistrial based on the State's statements. The District Court denied the motion. The jury returned a guilty verdict on both remaining counts on December 10, 2003. The District Court sentenced Novak to two concurrent state prison terms of 20 years, with 18 years suspended. This appeal followed.

**STANDARD OF REVIEW**

¶15 Claims of ineffective assistance of counsel present mixed questions of law and fact that we review *de novo*. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, ¶ 12, 97 P.3d 1095, ¶ 12. The standard for denial of a motion for a mistrial is whether the district court abused its discretion. *State v. Steele*, 2004 MT 275, ¶ 15, 323 Mont. 204, ¶ 15, 99 P.3d 210, ¶ 15. When a defendant raises the plain error doctrine to request our review of issues

that were not objected to at the district court level, our review is discretionary. *State v. Gray*, 2004 MT 347, ¶ 13, 324 Mont. 334, ¶ 13, 102 P.3d 1255, ¶ 13. We use the plain error doctrine sparingly on a case-by-case basis and consider claims to apply it in light of the totality of circumstances of each case. *Gray*, ¶ 13. Finally, we will reverse a conviction under the cumulative error doctrine only if accumulated errors prejudiced the defendant's right to a fair trial. *State v. Enright*, 2000 MT 372, ¶ 34, 303 Mont. 457, ¶ 34, 16 P.3d 366, ¶ 34.

## DISCUSSION

¶16 **Whether the performance of Novak's counsel denied him effective assistance at trial.**

¶17 Novak argues his counsel's failure to object to the District Court's improper preliminary jury instruction, to inadmissible evidence admitted by the State, and more frequently during his cross-examination denied him effective assistance at trial. The State counters by arguing that Novak's claims are better suited for consideration in post-conviction proceedings.

¶18 The Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee the right to effective assistance of counsel. Ineffective assistance of counsel claims fall into two categories: record-based and non-record based. *State v. Earl*, 2003 MT 158, ¶ 39, 316 Mont. 263, ¶ 39, 71 P.3d 1201, ¶ 39. A party may raise only record-based ineffective assistance claims on direct appeal. *Earl*, ¶ 39. We review whether the record discloses why counsel took, or failed to take, action in providing a defense when determining whether an ineffective assistance of counsel claim is appropriate

6

for direct, record-based review. *State v. Notti*, 2003 MT 296, ¶ 8, 318 Mont. 146, ¶ 8, 79 P.3d 289, ¶ 8. The claimant must raise a claim of ineffective assistance of counsel in a petition for post-conviction relief if the allegation cannot be documented from the record. *Earl*, ¶ 39.

¶19 Failure to object to testimony is generally record-based and thus appropriate for direct appeal. *Notti*, ¶ 8. If the record does not fully explain why counsel failed to object to the admission of evidence, however, the matter is best suited for post-conviction proceedings. *Notti*, ¶ 8. For instance, decisions regarding the number and timing of objections lie within counsel's tactical discretion, which would indicate that non-record based information explaining the tactics may be involved, and thus should be barred from record-based review. *State v. White*, 2001 MT 149, ¶ 16, 306 Mont. 58, ¶ 16, 30 P.3d 340, ¶ 16.

¶20 Novak's claim of ineffective assistance of counsel is best suited for post-conviction relief. The record does not disclose fully why Novak's counsel failed to object to certain evidence, to the improper preliminary jury instruction, or more frequently during Novak's cross-examination. Novak's counsel explained their reasons for not objecting to testimony regarding Novak's alleged controlling nature during a meeting with the State and the court in chambers. Novak's counsel was concerned that the District Court would admit the evidence regarding Novak's controlling personality following admission of the video-taped interview in which Novak admitted to having a sexual relationship with Elizabeth. Defense counsel made an apparent tactical decision in anticipation of their defense to allow that evidence to come in during the State's case-in-chief rather than as rebuttal evidence to Novak's testimony.

7

¶21 The District Court recognized that it would be improper to ask Novak's counsel to disclose their entire defense strategy, as this would "tip [their] hand to the State." The court acknowledged during a subsequent recess that evidence of Novak's controlling nature would be relevant to the issue of Elizabeth's reluctance to disclose her sexual relationship with Novak sooner. The court further acknowledged that Novak's counsel's failures to object to certain testimony were in anticipation of its defense, and because the court could not require them to disclose their strategy, the court expressed its understanding that it would rule on objections as they were made.

¶22 Because of the discretion that Novak's counsel exercised regarding disclosure of their defense strategy, it is clear that the record does not explain all of their tactical reasons for failing to object in the manner suggested on appeal. The record does reveal, however, that tactical reasons may have justified certain of their decisions. Decisions regarding the number and timing of objections lie within counsel's tactical discretion and should be barred from record-based review. *White*, ¶ 16. A post-conviction proceeding would allow counsel to explain entirely their tactical decisions. The ineffective assistance of counsel claim therefore is dismissed without prejudice to its being raised in a post-conviction relief proceeding. *State v. Hendricks*, 2003 MT 223, ¶ 12, 317 Mont. 177, ¶ 12, 75 P.3d 1268, ¶ 12.

¶23 **Whether the District Court abused its discretion in denying Novak's motion for a mistrial.**

¶24 Novak argues that the District Court abused its discretion in denying his motion for a mistrial. Novak asserts that comments made by the State in its rebuttal closing statement denied him his right to a fair trial. Novak argues that the State had no justification for

8

making arguments irrelevant to the charges, such as characterizing Novak's relationship with Elizabeth as incestuous and urging the jury to consider Jonestown and the church sex abuse scandals. The State counters by arguing that the District Court's ruling was within its discretion and should be affirmed.

¶25 The standard applied by a district court when ruling on a motion for a mistrial is whether the defendant was denied a fair and impartial trial. *State v. Gladue,* 1999 MT 1, ¶ 11, 293 Mont. 1, ¶ 11, 972 P.2d 827, ¶ 11. A trial court's denial of a motion for a mistrial is entitled to deference on appeal and should not be second guessed by this Court. *State v. Flores*, 1998 MT 328, ¶ 17, 292 Mont. 255, ¶ 17, 974 P.2d 124, ¶ 17. We will affirm the District Court's decision if the trial judge acted rationally and responsibly. *Flores*, ¶ 12.

¶26 A mistrial represents an exceptional remedy, thus remedial action short of a mistrial is preferred unless the ends of justice require otherwise. *Flores*, ¶ 17. In *Flores*, the defendant moved for a mistrial after the State arrested a defense witness in the presence of the jury. *Flores*, ¶¶ 13-14. Following the arrest, the court admonished the jury not to consider the arrest in evaluating the witness's testimony. *Flores*, ¶ 13. We held that the court's cautionary instruction served the ends of justice and thus the district court did not abuse its discretion in denying Flores' motion for a mistrial. *Flores*, ¶¶ 17-18.

¶27 The District Court found improper several of the State's remarks made in its rebuttal closing. Novak's counsel moved for a mistrial based on these inflammatory remarks. The District Court carefully considered the motion and recessed to research whether the inflammatory remarks warranted a mistrial. The court determined that, though some of the remarks were improper, they did not "create such a prejudice that the Defendant did not

9

receive a fair trial." The court noted that it instructed the jury not to consider the remarks of counsel as evidence, and to disregard remarks that were not supported by the evidence in the record.

¶28 The District Court acted rationally and responsibly in denying Novak's motion for a mistrial. The court carefully researched the issue before making its determination. As in *Flores*, the court reasoned that the jury instruction sufficiently cured any potential injustice. Because of the deference afforded to a district court's ruling on a motion for mistrial, and our reluctance to second-guess its determination, *Flores*, ¶ 17, we hold that the District Court did not abuse its discretion in denying Novak's motion. We caution the State, however, to refrain from tactics that may fall below the established norms of professional conduct. *State v. Statczar* (1987), 228 Mont. 446, 457, 743 P.2d 606, 613. We will not hesitate to act against inappropriate tactics. *State v. Stringer* (1995), 271 Mont. 367, 897 P.2d 1063.

¶29 **Whether this Court should apply the plain error doctrine to review Novak's claims on appeal.**

¶30 Novak argues that defense counsel's failure to object to prejudicial, inadmissible evidence compromised his right to a fair trial. He argues that this Court should apply the plain error doctrine to review these failures to object on appeal.

¶31 We will review a claim notwithstanding its being raised for the first time on appeal under the plain error doctrine if failure to do so may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may compromise the integrity of the judicial process. *State v. Bateman,* 2004 MT 281, ¶ 20, 323 Mont. 280, ¶ 20, 99 P.3d 656, ¶ 20.

¶32     Novak's claims are insufficient to invoke plain error review. His claims of ineffective assistance of counsel encompass all of the alleged errors. Novak may raise these issues in post-conviction proceedings. We therefore decline to apply the plain error doctrine.

¶33     **Whether the cumulative error doctrine entitles Novak to a new trial.**

¶34     Novak argues that numerous serious errors throughout the course of the trial warrant reversal under the cumulative error doctrine. He argues that the incorrect preliminary jury instruction, defense counsel's failure to raise objections to the admission of certain evidence, and the denial of Novak's motion for a mistrial constitute the cumulative errors that require reversal.

¶35     The cumulative error doctrine refers to a number of errors that, taken together, prejudice a defendant's right to a fair trial. *State v. Flowers*, 2004 MT 37, ¶ 46, 320 Mont. 49, ¶ 46, 86 P.3d 3, ¶ 46. Reversal is required under this doctrine once such accumulated errors are identified as having prejudiced a defendant's right to a fair trial. *Flowers*, ¶ 46. The existence of prejudice, however, must be proven by the defendant--mere allegations of error without proof of prejudice are inadequate to satisfy the doctrine. *Flowers*, ¶ 46.

¶36     We decline to apply the cumulative error doctrine to Novak's claims. The alleged errors are the District Court's denial of Novak's motion for a mistrial, and other errors that are addressed within his ineffective assistance of counsel claims. These claims were considered separately above. Application of the cumulative error doctrine is thus not appropriate in this case.

¶37     Affirmed.

_____

Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices