

DA 12-0056

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 270

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

ISAIAH MAURICE MORSETTE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Blaine, Cause No. DC 09-22
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jennifer A. Hurley, Hurley Kujawa, PLLC, Butte, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

            Donald A. Ranstrom, Blaine County Attorney, Chinook, Montana

Submitted on Briefs:   August 7, 2013
Decided:   September 17, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Morsette appeals from his June 2011 conviction of sexual intercourse without consent.  We affirm.

¶2    Morsette raises the following issues on appeal:

¶3    1.  Did the State violate Morsette's right to a speedy trial?

¶4    2. Did Morsette receive ineffective assistance of counsel when his attorney failed to object to evidence at trial?

¶5    3.  Did the State violate Morsette's right to due process by using his silence after arrest against him at trial?

¶6    4.  Is Morsette entitled to a new trial based upon cumulative error?

### PROCEDURAL AND FACTUAL BACKGROUND

¶7    Morsette became the manager of a restaurant in Chinook, Montana, in June 2009.  As manager he supervised other employees, several of whom were teen-aged girls.  In August 2009, one of those girls, a 15-year-old referred to as S.M., agreed to meet Morsette after work.  He bought some alcohol and rented a motel room.  S.M. testified that she and Morsette went to the motel room and drank until she lost consciousness.  She testified that she later woke to find Morsette having intercourse with her.  Two weeks later Morsette quit his job.  That same day the restaurant owner met with several of the female employees and their mothers.  During that meeting S.M. told the others that Morsette had sexually assaulted her.  Morsette was arrested that day in Havre.

2

¶8 Morsette testified at trial that he often related inappropriately to the young female employees. He admitted that he made overtly sexual remarks, offered to buy alcohol, talked about sneaking out, and suggested that they drink with him after work. He acknowledged this conduct and conceded that it was wrong. As to the incident with S.M., Morsette testified that at her request he bought a bottle of alcohol for her at a local bar, and that he then walked to a motel and rented a room for $50. He testified that he took a shower in the motel room and then went back to the restaurant to work the rest of his shift. He testified that after work he gave the alcohol to S.M. but then left her and walked to a bar. He testified that after he returned to the motel room to retrieve his identification, he stayed at the bar, drank and played pool. Morsette testified that after spending some time in the bar he drove to Havre to spend the night at a friend's house. He testified that at the time of his arrest he was "pretty shocked" and "didn't know what was going on."

¶9 In June 2011, a jury found Morsette guilty of sexual intercourse without consent pursuant to § 45-5-503, MCA. The District Court sentenced Morsette to the Montana State Prison for 35 years with 10 years suspended. Morsette appeals.

## STANDARD OF REVIEW

¶10 The applicable standard of review will be noted in the discussion of each issue.

## DISCUSSION

¶11 Issue 1: Did the State violate Morsette's right to a speedy trial?

¶12 A district court considering a speedy trial claim must determine the relevant facts and then assess whether those facts demonstrate a denial of the right to speedy trial. *State v.*

3

*Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. The facts are evaluated under four factors: the length of delay; the reasons for the delay; the accused's response to the delay; and prejudice to the accused. *Ariegwe*, ¶ 34. This Court reviews the findings of fact to determine whether they are clearly erroneous. *Ariegwe*, ¶ 119. The district court's decision on whether the facts demonstrate a denial of speedy trial is a question of constitutional law that this Court reviews de novo to determine whether it is correct. *Ariegwe*, ¶ 119.

¶13 Morsette filed two motions to dismiss for lack of speedy trial, and the District Court denied both after making thorough findings of fact. A total of 662 days elapsed between Morsette's arrest and the beginning of his trial. This is sufficient elapsed time to trigger a speedy trial inquiry. *State v. Couture*, 2010 MT 201, ¶ 49, 357 Mont. 398, 240 P.3d 987. The District Court carefully divided the elapsed time into nine periods that varied from 4 days to 164 days. After considering the facts and reasons for each discrete time period, the District Court allotted to the State the responsibility for 321 days. Much of the time allocated to the State was "institutional" delay, which is delay inherent in the criminal justice system caused by circumstances largely beyond the control of the State or the defendant.[1] Accordingly, it does not weigh heavily against the State, *State v. Blair*, 2004 MT 356, ¶ 19, 324 Mont. 444, 103 P. 3d 538. The District Court allocated the responsibility for 341 days to Morsette. While Morsette requests that this Court re-allocate some of the time to the State, it is clear that the District Court thoroughly considered the facts, both as to the discrete time

---

[1] For example, in this case one period of institutional delay was the time consumed when the District Court declared a mistrial after commencement of the first trial of the offense, due to Morsette's illness and inability to continue.

periods involved and the reasons for each of them. The District Court's factual decision was not clearly erroneous.

¶14 The next factor requires consideration of the accused's responses to the delay. The District Court found that Morsette caused or agreed to much of the pretrial delay. He caused delay to retain private counsel; he sought a continuance because his attorney was going on a trip; his health condition caused a mistrial when he could not continue after an initial attempt to bring the charges to trial; and a substantial delay was caused when Morsette sought a second mental health evaluation when he disagreed with an initial evaluation. Other than the fact that he moved to dismiss claiming denial of speedy trial, the District Court found that Morsette failed to exhibit "the timeliness, persistence and sincerity indicative of an actual desire for speedy trial."

¶15 The District Court reviewed whether the pretrial delay had prejudiced Morsette, considering whether there was oppressive pretrial detention; the level of anxiety and concern by the accused; and the loss of memory and evidence. While there was a significant period of pretrial incarceration, the District Court found that bail had been set early and at a reasonable amount ($25,000). Morsette made bail in February 2010, but was out only 15 days when he was charged with a new offense and his bail was revoked. When the amount was later reduced to $2,000 at Morsette's request, he did not make bail. The District Court also considered Morsette's argument that the pretrial incarceration was oppressive because he was in solitary confinement much of the time, and found that he was in solitary because he "had difficulty getting along with others at the detention facility and . . . threats to his

safety had been reported." The District Court found no material impact on Morsette's defense from unavailable witnesses or fading memory. The District Court found no prolonged disruption to Morsette's financial resources, specifically finding that his reports of employment history and income potential were misrepresented and self-serving.

¶16 On balance the District Court found that the State had overcome any presumption of prejudice to Morsette arising from the length of the delay. We find no reason to disturb the District Court's conclusions concerning speedy trial and affirm the decision to deny Morsette's motions to dismiss.

¶17 Issue 2: Did Morsette receive ineffective assistance of counsel when his attorney failed to object to evidence at trial?

¶18 Claims of ineffective assistance of counsel arising under the Montana (Art. II, sec. 24) or United States (Sixth Amendment) Constitutions present mixed questions of law and fact that this Court reviews de novo. *State v. Gunderson*, 2010 MT 166, ¶ 66, 357 Mont. 142, 237 P.3d 74. We review such decisions under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

¶19 *Strickland* requires that a defendant asserting a claim of ineffective assistance of counsel must establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors the result of the trial would have been different. *Gunderson*, ¶ 67. An attorney is not required to make all possible objections during a trial, and may legitimately decide to forego certain objections as a matter of trial tactics. *Claussel v. State*, 2005 MT 33, ¶ 20, 326 Mont. 63,

106 P.3d 1175; *Riggs v. State*, 2011 MT 239, ¶ 53, 362 Mont. 140, 264 P.3d 693. There is a strong presumption that an attorney's conduct falls within the wide range of reasonable professional service, and an attorney is not ineffective because another attorney might have proceeded differently. *Riggs*, ¶ 10.

¶20　At trial the State presented testimony about Morsette's relationships with his teenaged female employees, including that he asked them to hang out and drink with him. There was testimony that Morsette asked another employee if she had girlfriends he could meet and whether she could get him any "sex pills." There was testimony that Morsette would brush against the female employees, touch them, and flirt with them. There was testimony that he was seen in the company of women who were not his significant other and mother of his children. On appeal Morsette contends that this evidence was prejudicial, that it would have been excluded upon a proper objection, and that there was no plausible justification for failing to object to it. The State contends that there were sound tactical reasons for not objecting to this evidence and that failing to object was reasonable and not ineffective assistance. Both the State and Morsette agree that the claim of ineffective assistance can be reviewed on the record on appeal in this case.

¶21　Morsette has not satisfied his burden to overcome the presumption that he was provided effective assistance of counsel. In a criminal trial, defense counsel's trial tactics are necessarily constrained by the facts and evidence that will ultimately be examined by the jury. Morsette's attorney was faced with defending a client whose version of events the night of the crime would likely be viewed as implausible and unpersuasive by a jury.

7

Morsette's attorney certainly would have known that his client, if he testified, would likely have to admit that he bought alcohol on the night of the event and that he had rented a motel room. There was independent evidence of both facts. He also knew that the evidence would show that Morsette sent a text message to the victim and arranged to meet her when the restaurant closed that night.

¶22 In the face of this evidence, Morsette admitted the victim's version of the events up to the point after the restaurant closed and he gave her the alcohol he bought earlier. He testified that she then went on her own way and that he went to a bar where he had a few drinks and shot pool. He said that he then drove to Havre and spent the night at the house of his friend John. He claimed that he never went to the motel room with the victim, that he never drank with her, and that he never had sex with her.

¶23 It is not beyond the range of reasonable professional service to conclude that defense counsel here would recognize the difficulty of convincing a jury to believe that Morsette engaged in detailed planning for his meeting with the victim, but abandoned the enterprise for no apparent reason to shoot pool and drive to Havre. The obvious tactic adopted by the defense was to admit that Morsette often engaged in inappropriate behavior with his young employees, but that he did so innocently. He acknowledged in his testimony that in retrospect he acted inappropriately, but that he just wanted to be a "cool boss." But, he knew where to draw the line with his admissions. By admitting to flaws and failures while claiming to have nothing to hide, there was some chance to develop reasonable doubt in the mind of at least one member of the jury. Letting in all the evidence arguably minimized

8

Morsette's conduct toward the victim by showing that he acted similarly with the other employees and none of them were claiming that he sexually assaulted them.

¶24 Morsette's attorney followed this theory of defense beginning with his opening statement, emphasizing that "inappropriate conduct does not always mean illegal conduct" and that the case was about "impropriety rather than illegality." This was followed by Morsette's testimony admitting most of the victim's account of the evening of the crime, but denying that he went to the motel and sexually assaulted her. He testified that he now knows that as an adult and a boss he "crossed a boundary" with his young female employees.

¶25 At the request of the defense the District Court gave a cautionary instruction about evidence of "other acts."

> The State has offered evidence that the Defendant at another time engaged in other acts. That evidence was not admitted to prove the character of the Defendant or to show he acted in conformity therewith. The only purpose of admitting the evidence was to show proof of motive, opportunity, plan, knowledge, identity, absence of mistake or accident. You may not use that evidence for any other purpose.
>
> The Defendant is not being tried for those other acts. He may not be convicted for any other offense than that charged in this case. For the jury to convict the Defendant of any other offense than that charged in this case may result in unjust double punishment of the Defendant.

The District Court gave this instruction twice during the course of the trial and again in the final instructions to the jury. The defense relied upon this instruction in closing argument and again explained Morsette's contention that he acted only inappropriately, not illegally, with all his female employees.

9

¶26    Morsette's attorney reasonably adopted this trial strategy in the face of a difficult factual defense presented by his client. Morsette has not established that counsel's performance or trial tactics fell below a reasonable standard of professional services.

¶27    Issue 3: Did the State violate Morsette's right to due process by using his silence after arrest against him at trial?

¶28    This Court reviews a district court's decision on a motion for mistrial to determine whether the defendant was denied a fair and impartial trial. *State v. Novak*, 2005 MT 294, ¶ 25, 329 Mont. 309, 124 P.3d 182. A mistrial is an exceptional remedy and remedial action short of a mistrial is a preferred remedy. *State v. Flores*, 1998 MT 328, ¶ 17, 292 Mont. 255, 974 P.2d 124. A district court's decision on a motion for mistrial is entitled to deference and will be affirmed if the trial judge acted rationally and responsibly. *Novak*, ¶ 25.

¶29    Some background is required for this issue. Morsette testified at trial to an alibi: that he left Chinook without assaulting the victim and spent the night at a friend's place in Havre. Morsette did not disclose this defense prior to trial as required by § 46-15-323(2), MCA, nor did he provide a list of witnesses to support the defense as required by § 46-15-323(6)(a), MCA. While Morsette did not disclose his story to law enforcement or the prosecution, he discussed it during a court-ordered psychiatric evaluation, and it appeared in the psychiatrist's report. During opening statements Morsette's attorney explained the alibi to the jury.

¶30    At that point the State made a motion asking the District Court to disallow any evidence of the alibi because of Morsette's failure to make the disclosures required by § 46-

10

15-323, MCA. The District Court held a hearing outside the presence of the jury and denied the State's motion because the alibi story was previously disclosed during the evaluation. However, as a sanction for failing to follow the statute, the District Court ordered that only Morsette and the defense investigator could testify. The District Court specifically told the State that it could, through witnesses or cross-examination, "question the credibility of these contentions by the defendant that he was not in the county at the time."

¶31 As noted, Morsette testified in his own defense, claiming that he left Chinook and went to Havre to his friend's place during the time that the victim was attacked. On cross-examination, the State began by noting that Morsette had been in custody since 2009, and then asked where he had gone in Havre. The following exchange occurred:

> Q. And if you'd have told officers that you were at a different place, would they have investigated that, when you were arrested I mean?
> A. I don't think they asked me.
> Q. Isn't that your job—their job is to investigate where persons say that they were on a given time when they are alleged to have committed a crime elsewhere?
> A. If they are told, I guess.
> Q. And you're the only one that had the power to tell them, aren't you?
> A. Where I was?
> Q. Un-huh.
> A. There's some other people that could have told them where I was.
> Q. Who would that have been?
> A. My friend John whose house it was.

At this point the defense objected and there was a hearing out of the presence of the jury.

¶32 The defense contended that the State's questions were an "improper comment on the defendant's exercise of his rights under *Miranda*," and asked for a mistrial. The State

11

responded that there was no inquiry about *Miranda* and that Morsette had "opened the door" by giving his alibi story. The defense contended that the jury had been "contaminated" and was "toast" and that the proper remedy was a mistrial; if not, then a "strong cautionary instruction" should be given. Since there were two defense attorneys, the District Court asked the other whether he agreed to the need for a mistrial, and that attorney stated: "I do agree with the cautionary instruction."

¶33 The District Court then reviewed the transcript of the State's questions and Morsette's answers. The District Court denied the motion for a mistrial, noting that the prosecutor had not mentioned Morsette's exercise of *Miranda* rights and had not suggested that any inference should be drawn from Morsette's silence. The District Court further stated that a cautionary instruction to the jury might be harmful to the defense by calling attention to the issue, but that a limitation on the State's questions about *Miranda* would be in order.

¶34 The defense then asked for and got a recess to discuss the situation with their client. When Morsette and his attorneys returned, they announced that they "would prefer a cautionary instruction to the prosecution" outside the hearing of the jury. The District Court then instructed the prosecution that no mention could be made of whether Morsette exercised his *Miranda* rights. The trial proceeded, and in closing argument the prosecution did not refer to Morsette's failure to disclose his alibi to law enforcement.

¶35 Morsette contends on appeal that the State's questions to him as quoted above violated his right to due process because they constituted an attack upon his silence after receiving *Miranda* warnings. It is well established that impeachment use of a defendant's

12

silence after arrest and after receiving *Miranda* warnings is a violation of due process. *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 2245 (1976); *State v. Wagner*, 2009 MT 256, ¶ 16, 352 Mont. 1, 215 P.3d 20.

¶36    As this Court noted in Wagner:

> Underlying *Doyle* is the principle that *Miranda* warnings contain an implicit assurance that exercising *Miranda* rights will carry no penalty, and that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle*, 426 U.S. at 618, 96 S. Ct. at 2245.

*Wagner*, ¶ 16. In *Wagner* this Court found plain error and reversed the conviction despite the failure of defense counsel to object at trial. However, the factual differences between *Wagner* and the present case are significant. During an interview with detectives, Wagner said "something to the effect" that he wanted to speak to an attorney and that he did not want to dig himself a deeper hole. The prosecution used that invocation of counsel "in all phases of the trial:" during opening statement, during the case-in-chief, during cross-examination, and in closing argument. *Wagner*, ¶ 18. The prosecution employed similar tactics in cross-examination and in closing argument in the cases considered by the Supreme Court in *Doyle*. *Doyle*, 426 U.S. at 613-16, 96 S. Ct. at 2242-44.

¶37    The State's questions that Morsette complains of on appeal are similar to those involved in *State v. Godfrey*, 2004 MT 197, 322 Mont. 254, 95 P.3d 166. In that case the prosecutor asked the defendant about the amount of time he had to "think up an explanation" for what happened, and about whether the defendant's trial testimony was "the first time that anyone has really heard this explanation." *Godfrey*, ¶ 18. Godfrey argued on appeal that the

13

questions were a violation of the *Doyle* rule and that this Court should undertake plain error review of the issue.

¶38    This Court examined the issue and upheld the conviction. While the questions to Godfrey were "inadvisable," this Court determined that they "were more a comment on Godfrey's *story* than on his *silence*." *Godfrey*, ¶ 37 (emphasis original). The questions asked in the present case are sufficiently similar to those in *Godfrey* that we reach the same conclusion. The prosecutor here asked questions that attacked the veracity of Morsette's story and its possible recent fabrication. The questions were more about the story than about any silence. It is not improper for a prosecutor to attempt to convince a jury that a defendant's story is a recent fabrication. *State v. Tadewaldt*, 2010 MT 177, ¶ 22, 357 Mont. 208, 237 P.3d 1273.

¶39    Contrasting *Wagner*, the prosecution here did not make or attempt to make unfair use of Morsette's comments or silence, if any, after receiving *Miranda* warnings. The prosecution did not pursue the issue in either opening or closing statements or in the examination of any other witness. The cross-examination of Morsette was more circumspect and focused on the defendant's alibi—his version of the events on the night in question. Moreover, the prosecutor was given some leeway in the cross-examination as a sanction for Morsette's failure to disclose the alibi as required by Montana law. Giving deference to the District Court's decision, we do not find that denial of the motion for a mistrial was irrational or irresponsible under the circumstances.

14

¶40 Issue Four: Whether Morsette's conviction should be reversed based upon cumulative error.

¶41 Morsette contends that this Court should reverse his conviction based upon cumulative error. Cumulative error can occur when "a number of errors, taken together, prejudiced a defendant's right to a fair trial." *State v. Ferguson*, 2005 MT 343, ¶ 126, 330 Mont. 103, 126 P.3d 463. The concept of cumulative error should only be applied when there has been error. *State v. Brasda*, 2003 MT 374, ¶ 36-37, 319 Mont. 146, 82 P.3d 922.

¶42 Having found no error in Morsette's conviction, we have no occasion to apply the concept of cumulative error.

## CONCLUSION

¶43 The District Court's conclusion, following an evaluation of the relevant factors, that Morsette was not denied his right to a speedy trial was correct. Morsette did not establish that his trial counsel's performance was deficient or that his counsel was ineffective. The prosecutor's cross-examination of Morsette regarding his alibi did not violate due process. Morsette has not established that cumulative error occurred in his trial.

¶44 Morsette's conviction is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON

15

/S/ BRIAN MORRIS