No. 05-024

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 41

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

KIRK R. MOLDER, SR.,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and for the County of Cascade, Cause No. BDC 03-172,
                    The Honorable Julie Macek, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

                Kristina Neal, Assistant Appellate Defender, Appellate Defender Office,
                Helena, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
                Attorney General, Helena, Montana

                Brant Light, County Attorney; Mary Ann Ries and Sarah Corbally, Deputy
                County Attorneys, Great Falls, Montana

_____

Submitted on Briefs:  February 28, 2006
Decided:  February 13, 2007

Filed:

_____
                            Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Kirk R. Molder, Sr. (Molder), appeals from a judgment entered in the Eighth Judicial District Court, Cascade County, sentencing him to 75 years at Montana State Prison after a jury found him guilty of five counts of sexual intercourse without consent and four counts of incest.  We affirm.

¶2     Molder's appellate counsel has stated the issues Molder raises on appeal as follows:

¶3     1.   Molder was entitled to a continuance after he presented unrefuted complaints that his attorney was unprepared for trial.

¶4     2.   The District Court erred when it held that defense counsel's failure to meet with Molder until the night before trial, failure to contact Molder's defense witnesses, failure to interview any of the State's witnesses, and failure to follow up on Molder's motion to dismiss did not amount to substantial complaints.

¶5     The "issues" as presented by Molder are actually statements of fact, not questions for this Court to resolve.  Nevertheless, we address the implicit questions contained in these statements.

BACKGROUND

¶6     On April 18, 2003, the State charged Molder by information with three counts of sexual intercourse without consent and three counts of incest.  The State subsequently charged Molder by an amended information with two additional counts of sexual intercourse without consent and one additional count of incest.  The Cascade County Public Defenders' Office (Public Defenders' Office) appointed attorney Carl Jensen to

2

represent Molder.

¶7 A few months later, Molder requested that the District Court review Jensen's actions as counsel. The District Court held a hearing to consider Molder's complaints on March 3, 2004. At the hearing Jensen asked to withdraw, explaining that his relationship with Molder had deteriorated and communication between them had effectively ended two months earlier. The District Court determined that Jensen had adequately represented Molder, but found that the communication problem was sufficient to warrant new counsel.

¶8 The Public Defenders' Office substituted Meghan Lulf Sutton (Lulf Sutton) as counsel for Molder. Molder soon became dissatisfied with Lulf Sutton's representation and the District Court held a hearing on May 5, 2004, to consider Molder's complaints. Again, Molder complained of insufficient communication with Lulf Sutton. The District Court, however, ordered Lulf Sutton to continue representing Molder. Shortly thereafter, Lulf Sutton filed a motion requesting that she be removed as Molder's counsel because of an irretrievable breakdown of communication. At a May 19, 2004, hearing Molder confirmed this communication breakdown and the District Court allowed Lulf Sutton to withdraw and appointed Steven Hudspeth (Hudspeth) as counsel for Molder on May 26, 2004.

¶9 Molder's trial was scheduled for November 8, 2004. On October 28, 2004, Molder filed two motions: one to dismiss the charges and the second to set hearing for the motion to dismiss. Both motions indicated Molder was dissatisfied with Hudspeth's representation. On November 8, 2004, before trial began, the District Court gave Molder

3

the opportunity to explain his complaints. Molder claimed that other than two brief conversations at status hearings, he had not talked with Hudspeth until the previous day. He said that at that time he had given Hudspeth a letter written by one of the victims in which she denied having sexual contact with Molder. Hudspeth responded that he had no prior notice of this letter, as it was not in the materials provided to him by the Public Defenders' Office.

¶10 Molder further advised the District Court that Hudspeth had not interviewed the victims or other witnesses. Molder also complained that Hudspeth had not interviewed a witness, who he acknowledged was a registered violent offender, who purportedly claimed to have seen caseworkers coerce potential witnesses. Molder complained about Hudspeth's failure to discuss trial strategy and objectives with him. Molder also claimed that no one provided him with discovery or court notices and that Hudspeth cited time concerns in disregarding expert witness issues lingering from Molder's past representation.

¶11 In addition, Molder also complained that there had been no hearing on a motion to dismiss filed by his first lawyer, Jensen.

¶12 Despite these complaints, Molder said that he considered Hudspeth qualified. However, he believed Hudspeth's efforts were insufficient and that he was unprepared for trial.

¶13 Hudspeth responded to Molder's complaints by explaining that trial strategy is left to the attorney. He also said that Molder wanted to litigate issues that could harm his case. Hudspeth considered the case to be relatively simple to present to a jury, as all

three of the victims had made statements that were inconsistent with their accusations against Molder. Hudspeth said that he purposely chose not to interview the victims before trial because he knew what they would say and he hoped to catch them in a lie on cross-examination and expose the inconsistencies in their statements. Hudspeth also had considered possible defenses based on venue and the elements of incest. Hudspeth said that he met with Molder several times, but that he did refuse to go to the jail every time Molder asked him to.

¶14 At this hearing the District Court explained:

> Here's the bottom line, Mr. Molder, is that this is your third attorney that I have given you, and I have done that to try and bend over backwards here to make sure that you – in the hope that you would be satisfied with your counsel . . . .
>
> As I see it, the problem is, Mr. Molder, you want to run the show, and if you want to run the show, then the only way for you to do that is to represent yourself . . . .

¶15 The District Court asked Molder what he wanted and he responded, "I would like to be prepared for this trial." Molder said he did not want new counsel, but, rather, wanted more time to prepare and discuss the trial with Hudspeth. Molder did not allege that there was a lack of communication between himself and Hudspeth, nor did he allege that the attorney-client relationship had broken down. Molder did not request Hudspeth's removal or the appointment of another attorney to represent him. Rather, what he wanted was the trial to be continued to a later date.

¶16 Hudspeth, however, said he was prepared to go to trial.

¶17 The District Court concluded as follows:

5

It appears to this Court that Mr. Hudspeth has indicated that he is prepared to go to trial today as required, that he has reviewed this matter, that he is aware of the prior statements of these alleged victims in this matter, and that he does not need additional time to prepare here.

I think that as far as the strategy of the case, that is something that is left to counsel, and it appears to me that considering everything Mr. Hudspeth is prepared to go forward and I think is prepared to address the concerns that you had. Most of those concerns are things that either will not come up here at trial or that Mr. Hudspeth is prepared to counter here, so I am going to – we're going to proceed here. Mr. Hudspeth is going to represent you, and we're going to go from here.

¶18 At the end of the three-day trial, the jury found Molder guilty of five counts of sexual intercourse without consent and four counts of incest. This appeal followed.

STANDARDS OF REVIEW

¶19 This Court reviews a district court's denial of a motion to continue to determine whether the district court abused its discretion. *State v. Clifford*, 2005 MT 219, ¶ 25, 328 Mont. 300, ¶ 25, 121 P.3d 489, ¶ 25. The district court's ruling on such a question will not be overturned absent a showing of prejudice to the moving party. *State v. Toulouse*, 2005 MT 166, ¶ 16, 327 Mont. 467, ¶ 16, 115 P.3d 197, ¶ 16. It is within the district court's discretion to rule on a defendant's requests regarding counsel, and this Court will only overturn such a ruling if the district court abused its discretion. *See State v. Gallagher*, 1998 MT 70, ¶ 10, 288 Mont. 180, ¶ 10, 955 P.2d 1371, ¶ 10 (*Gallagher I*).

DISCUSSION

ISSUE ONE

¶20 **Mr. Molder was entitled to a continuance after he presented unrefuted complaints that his attorney was unprepared for trial.**

¶21 According to Molder's brief, the District Court abused its discretion by denying

6

his motion for a continuance when Molder presented "unrefuted" claims that his counsel was unprepared for trial. Initially, we note that Hudspeth did refute Molder's statement that he was unprepared for trial.

¶22 Molder argues that his motion should have been granted because the length of delay he requested was reasonable. He says he only wanted sufficient time to meet with Hudspeth and prepare for trial. He also claims that a delay would not have prejudiced the State because its witnesses would still have been available, and that he sought the continuance for legitimate reasons. Finally, he argues, for the first time on appeal, that the lack of a continuance violated his fundamental right to effective assistance of counsel by forcing him to go to trial with an unprepared attorney and, therefore, the interests of justice required a continuance.

¶23 Whether a motion to vacate a trial should be granted is left to the discretion of the trial court, which may grant such a motion "if the interests of justice so require." Sections 46-13-202(2) and (3), MCA. Molder analogizes his case to *State v. Sotelo*, 209 Mont. 86, 679 P.2d 779 (1984). In *Sotelo*, the defendant's initial attorney withdrew and new counsel did not learn of his appointment until less than a month before trial. Nevertheless, the district court denied the new attorney's motion for a continuance. In the limited time remaining before the scheduled trial date, the new attorney was able to interview only some of the State's witnesses and was unable to locate possible defense witnesses. *Sotelo*, 209 Mont. at 89-90, 679 P.2d at 781-82. On appeal, this Court concluded that the district court abused its discretion in refusing to grant the continuance. We considered the length of the requested delay, whether there was a showing that the

State's case would be prejudiced, the reasons for the requested continuance, whether defense counsel was diligent in preparation for trial, whether the defendant's right to a speedy trial would be violated, and the defendant's right to effective assistance of counsel. *Sotelo*, 209 Mont. at 91, 679 P.2d at 782.

¶24    In this case, unlike *Sotelo*, the new attorney, Hudspeth, was appointed to represent Molder more than five months before trial. In *Sotelo*, it was the attorney's lack of time to prepare for trial that lead to several witnesses not being interviewed. Here, on the other hand, Hudspeth deliberately decided not to interview some witnesses prior to trial for strategic reasons. In *Sotelo*, it was the attorney who requested the continuance. Here, Hudspeth said that he was ready for trial. The record supports Hudspeth's claim that he was prepared. He effectively represented Molder by exploring the inconsistencies in the victims' statements, preparing various defense theories, and utilizing the letter he received from Molder the day before trial.

¶25    While the victims may have been available at a later date, a continuance granted on the morning of trial would have forced the young victims to undergo the emotional trauma of waiting and then preparing for trial again.

¶26    Molder claims that Hudspeth did not meet with him enough to be prepared for trial, but this claim is directly contrary to Hudspeth's statement that he was, indeed, prepared to go to trial. Molder also claims that Hudspeth failed to interview various witnesses, including the victims. Hudspeth, however, explained that his strategy was to not personally interview the victims so that he could better impeach them on cross-examination. The record reflects that he pursued this strategy at trial. Regarding

8

Hudspeth's alleged failure to interview other witnesses, Molder only named a registered violent offender who supposedly witnessed alleged coercion of other witnesses. Hudspeth chose not to present a defense based on a claim that the victims had been coerced, but, rather, adopted a strategy of impeaching their testimony based on their inconsistent statements. There is "a strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions." *State v. Lucero*, 2004 MT 248, ¶ 15, 323 Mont. 42, ¶ 15, 97 P.3d 1106, ¶ 15. We cannot determine, on the record presented, that counsel's strategy was unreasonable.

¶27 Molder also criticizes Hudspeth's failure to follow up on a motion to dismiss filed by his original counsel. This motion was based on the State's alleged destruction of, or failure to record, the original interviews with the victims. In these interviews the victims denied having sexual contact with Molder. There is no evidence that these interviews were recorded and that the State destroyed the recordings. While this Court has stated that it is probably the better practice to record interviews, we have refused to adopt a per se rule that interviews of child sexual abuse victims must always be recorded. *State v. Weaver*, 1998 MT 167, ¶ 51, 290 Mont. 58, ¶ 51, 964 P.2d 713, ¶ 51. The motion to dismiss the prosecution because these interviews were not recorded had little, if any, chance of success. In addition, two of the State's witness, including the DPHHS worker who conducted the original interviews, testified at trial that the victims did indeed deny any sexual contact with Molder. Thus, Molder suffered no prejudice by the fact that the interviews were not recorded and Molder's substantial rights were not affected by Hudspeth's failure to pursue the motion to dismiss. *See* § 46-20-701(2), MCA.

¶28 Considering the factors announced in *Sotelo*, the District Court did not abuse its discretion by refusing to grant Molder a continuance.

ISSUE TWO

¶29 **The District Court erred when it held that defense counsel's failure to meet with Molder until the night before trial, failure to contact Molder's defense witnesses, failure to interview any of the State's witnesses, and failure to follow up on Molder's motion to dismiss did not amount to substantial complaints.**

¶30 Molder argues that he came forward with substantial complaints about Hudspeth's representation and, thus, was entitled to a separate hearing to determine if counsel should be replaced pursuant to *Gallagher I*. He claims that the complaints outlined above in the discussion of Issue One are substantial and, thus, are sufficient to require a separate hearing. However, he does not state what the desired result of that hearing would have been.

¶31 This Court held in *Gallagher I* that if a criminal defendant presents a seemingly substantial complaint regarding the effectiveness of counsel, the court should conduct a hearing to address the merits of the defendant's claims. The purpose of the hearing is to assess a defendant's request for substitution of counsel. *Gallagher I*, ¶ 14 (quoting *City of Billings v. Smith*, 281 Mont. 133, 136, 932 P.2d 1058, 1060 (1997)). The *Gallagher I* Court also held that when the district court is presented with allegations of ineffective assistance of counsel, the district court must make an adequate initial inquiry into the nature of those complaints and determine if they are seemingly substantial. Only if the district court concludes the defendant has presented seemingly substantial complaints

10

about adequate counsel must it then hold a further hearing to address the validity of those complaints. *Gallagher I*, ¶ 15. If the district court determines that the defendant and his counsel have a conflict so great that it results in a total lack of communication it should appoint new counsel. *Gallagher I*, ¶ 24 (quoting *State v. Zackuse*, 250 Mont. 385, 385-86, 833 P.2d 142, 142 (1991)).

¶32 In this case, Molder did not claim that he and Hudspeth had a conflict so great that it resulted in a total lack of communication. Furthermore, Molder did not request different counsel:

> THE COURT: So just so we're clear here, is it your request that your trial be continued? Is it your request that you have new counsel? What's your request?
>
> MOLDER: I'm not asking for new counsel. I am in hopes that – I hate to sit here and make complaints about my attorney because I believe my attorney knows what he's doing. I believe that he's experienced, and I think he's – you know, he's not – I have trust with this attorney, where I didn't with the first attorney.

¶33 A district court need only appoint new counsel if the defendant so requests and, at a separate hearing to consider such request, it determines that the defendant and his counsel have a conflict so great that it results in a total lack of communication. *See Gallagher I*, ¶ 24 (quoting *Zackuse*, 250 Mont. at 385-86, 833 P.2d at 142). It is not necessary for the district court to hold a separate hearing to decide whether to grant a motion for a continuance. In this case, because there was no request for new counsel, a separate hearing was not necessary.

CONCLUSION

¶34 We conclude that the District Court did not abuse its discretion in denying

11

Molder's motion for a continuance of his trial and that a separate hearing to consider such motion was not necessary. The judgment and sentence of the Eighth Judicial District Court, Cascade County, is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE