FILED

06/16/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0156

DA 15-0156

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 151

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TIMOTHY CHEETHAM SR.,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DC 14-02
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Greg Beebe, Beebe Law Firm, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell L. Ployhar, Assistant
Attorney General, Helena, Montana

          Steven C. Haddon, Jefferson County Attorney, Boulder, Montana

Submitted on Briefs:  April 13, 2016

Decided:  June 16, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Timothy Cheetham Sr. appeals the findings, judgment, and sentence entered by the Fifth Judicial District Court, Jefferson County, on a jury verdict finding him guilty of one count of sexual intercourse without consent, one count of sexual assault, and one count of sexual abuse of children. We restate the issues on appeal as follows:

*1.    Whether the District Court abused its discretion by failing to conduct an adequate inquiry into Cheetham's request for substitute counsel.*

*2. Whether Cheetham was denied effective assistance of counsel.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    In January 2014, the State charged Cheetham with the following felony offenses: sexual intercourse without consent in violation of § 45-5-503, MCA; sexual assault in violation of § 45-5-502, MCA; and sexual abuse of children in violation of § 45-5-625, MCA. The offenses were alleged to have occurred in 2004 when Cheetham—who was thirty-two years old at the time[1]—and the victim, N.S.—who was approximately five years old at the time—were living together with N.S.'s grandmother, J.P., in Whitehall, Montana.

¶4    At trial, N.S. testified that Cheetham had touched her inappropriately on her chest and her vagina in 2004. She also testified that Cheetham forced her to watch

---

[1] The State amended the charge in August 2014 to correct Cheetham's age at the time of the events in question.

pornographic movies with him that depicted children having sexual intercourse. N.S. also testified that Cheetham had forced intercourse with her on one occasion.

¶5 N.S. was interviewed four times before trial. N.S. had two forensic interviews, one in 2006 and one in 2013. She was interviewed in early 2014 by a detective from the Jefferson County Sheriff's Office, and again before trial by an investigator working with defense counsel. On cross-examination, Cheetham's counsel, Steven Scott, questioned N.S. about inconsistencies in her statements in the four interviews. N.S. explained that she remembered things during later interviews and at trial that she did not remember during earlier interviews. She testified that she did not remember most of the events until a few years after they occurred—beginning in 2006. She also testified that while she recalled the inappropriate touching earlier, she did not recall the penetration incident until she saw Cheetham in a store and began having flashbacks.

¶6 N.S.'s therapist testified regarding counseling sessions she had with N.S. relating to the sexual abuse. She testified that she often sees instances of delayed disclosures from sexual abuse victims. The State's child abuse expert confirmed that delayed disclosure is common, as is post-traumatic stress disorder (PTSD). Scott called an expert forensic psychologist, who pointed out that N.S. provided different details about the alleged rape that the expert would consider as "core details of the experience" that N.S. should have been unlikely to have forgotten.

¶7 N.S's mother, J.L., and J.P. also testified at trial and were questioned about what N.S. told each of them about Cheetham. J.L. and N.S's therapist testified about the ways

in which the events have continued to negatively affect N.S.'s life—including nightmares, trouble in school, depression, and suicidal behavior resulting in three months of inpatient treatment at Shodair Children's Hospital in 2014.

¶8 The jury found Cheetham guilty on all three counts. Prior to sentencing, Scott filed a motion to dismiss for negligent destruction of evidence, arguing that the State failed to provide and preserve an exculpatory medical report of a forensic medical examination performed in 2006 on N.S. by Dr. Salisbury. He did not attach the medical report to the motion or brief but quoted the document as stating, "[N.S.'s] exam was within normal limits with copious amounts of hymen intact. [This] does not negate the possibility of a penetration injury. The narrowing noticed in the above exam, could be consistent with patient's history and suspicious of a previous injury."

¶9 Scott represented in his brief that he attempted to obtain the medical report from the County Attorney but was told that it could not be obtained through Child Protective Services (CPS). Noting that CPS once referenced the report, Scott concluded that the report must have been negligently destroyed. In response to the motion to dismiss, the State argued that the prosecution tried to obtain, but never possessed, the 2006 medical report in question. In any event, the State argued, the report was not favorable to Cheetham because it did not negate the possibility of penetration injury.

¶10 Eventually Scott obtained the medical report as a result of a subpoena to Dr. Salisbury. Before the court ruled on the motion, however, Scott filed a notice withdrawing the motion to dismiss for negligent destruction of evidence.

4

¶11 On the day of the sentencing hearing, the District Court received a letter from Cheetham addressed to the court and the chief public defender alleging several instances of ineffective assistance of counsel in relation to the medical report. In the letter Cheetham claimed that the medical report "provides cause for reasonable doubt that a penetration rape of a 5 year old child by a grown man lasting 5-8 minutes could leave the child's hymen intact." Based on Scott's failure to use the medical report, Cheetham requested that Scott "be dismissed [and] replaced." After questioning Cheetham, Scott, and the State's counsel, the court declined to address the substance of Cheetham's allegations and determined that there was "no total breakdown of communication" between Cheetham and Scott that would require that the sentencing hearing be continued.

¶12 The court proceeded with the hearing and sentenced Cheetham to the Montana State Prison for 100 years with 50 years suspended for each of the three counts, to run consecutively. Cheetham appeals.

## STANDARDS OF REVIEW

¶13 A request for substitute counsel is within the sound discretion of the district court, reviewed for abuse of discretion. *State v. Edwards*, 2011 MT 210, ¶ 14, 361 Mont. 478, 260 P.3d 396. A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Sage*, 2010 MT 156, ¶ 21, 357 Mont. 99, 235 P.3d 1284.

¶14 Ineffective assistance of counsel claims present mixed issues of law and fact that we review de novo. *State v Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88. This

5

Court reviews claims of ineffective assistance of counsel on direct appeal if the claims are based solely on the record. *Clary*, ¶ 12. "[I]f the record does not demonstrate 'why' counsel did or did not take an action which is the basis of the claim, the claim is more suitable for a petition for postconviction relief where a record can be more fully developed." *State v. Heavygun*, 2011 MT 111, ¶ 8, 360 Mont. 413, 253 P.3d 897 (quoting *State v. Sartain*, 2010 MT 213, ¶ 30, 357 Mont. 483, 241 P.3d 1032) (internal quotation marks omitted).

**DISCUSSION**

¶15     *1.     Whether the District Court abused its discretion by failing to conduct an adequate inquiry into Cheetham's request for substitute counsel.*

¶16     Cheetham argues that the District Court erred by failing to conduct an adequate inquiry into his complaints. Cheetham claims that *State v. Schowengerdt*, 2015 MT 133, 379 Mont. 182, 348 P.3d 664, is an "instructive similar case" and notes that Scott also served as trial counsel in that case. Cheetham asserts that his complaint regarding Scott's failure to investigate the medical report and introduce it at trial is an "obvious one presenting a 'seemingly substantial' allegation of [ineffective assistance of counsel]." Accordingly, Cheetham argues, the District Court should have inquired "into the substance" of his complaints.

¶17     The State argues that the District Court adequately inquired into Cheetham's complaints about counsel. The State points out that the court asked Cheetham and Scott about the conflict and, based on their responses, concluded that they did not have a breakdown in communication and could communicate civilly. The State contends that

6

Cheetham and Scott's disagreement about the medical report was simply a "disagreement about the tactics being taken" and thus "do[es] not establish a ground for new counsel." As such, the State asserts that Cheetham's claims were not "seemingly substantial" and that the court did not abuse its discretion when it declined to hold a hearing or appoint new counsel.

¶18   The right to effective assistance of counsel under the United States and Montana Constitutions "does not grant defendants the right to counsel of their choice." *State v. Dethman*, 2010 MT 268, ¶ 15, 358 Mont. 384, 245 P.3d 30 (citing *State v. Craig*, 274 Mont. 140, 149, 906 P.2d 683, 688 (1995)). "So long as appointed counsel is rendering effective assistance, a defendant may not demand dismissal or substitution of counsel simply because he or she lacks confidence in, or does not approve of, his or her appointed counsel." *Dethman*, ¶ 15 (citations omitted).

¶19   Our case law establishes that for the court to replace a defense attorney, the defendant bears the burden of presenting material facts that establish a "complete collapse" of the attorney-client relationship, a total lack of communication, or ineffective assistance of counsel. *Edwards*, ¶ 32; *State v. Kaske*, 2002 MT 106, ¶ 30, 309 Mont. 445, 47 P.3d 824.

¶20   When a defendant raises complaints against his attorney and seeks substitution of counsel, the district court must make an adequate initial inquiry into the nature of those complaints and determine if they are "seemingly substantial." *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371. "In reviewing a district court's inquiry, we

7

do not examine whether counsel was ineffective, but instead, whether the district court's inquiry into the claim was adequate." *State v. MacGregor*, 2013 MT 297, ¶ 25, 372 Mont. 142, 311 P.3d 428. A district court's inquiry is adequate when the "court considers the defendant's factual complaints together with counsel's specific explanations addressing the complaints." *Schowengerdt*, ¶ 17 (citation and internal quotation marks omitted). *Accord.*, *Dethman*, ¶ 16; *Gallagher*, ¶ 15; *City of Billings v. Smith*, 281 Mont. 133, 137, 932, P.2d 1058, 1060 (1997). In contrast, a district's court inquiry is inadequate if it fails to conduct "even a cursory inquiry" into the defendant's complaints, in which case remand is justified. *Schowengerdt*, ¶ 17.

¶21 If the district court's adequate inquiry finds that the defendant's complaints are seemingly substantial, a hearing must be held to determine their validity. *Gallagher*, ¶ 14. Conversely, a hearing is not required if the court finds that the defendant's complaints are insubstantial. *MacGregor*, ¶ 26. If a defendant's complaint is based on the allegation that counsel is rendering ineffective assistance, the complaint is "seemingly substantial" if it makes "some showing of fact indicating that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. Those facts must make a showing of deficiency to overcome the presumption that a defendant was provided with effective assistance of counsel." *MacGregor*, ¶ 26 (internal citations omitted). If the defendant does not meet his burden, he has the choice of continuing with his present counsel or having counsel dismissed and proceeding pro se. *State v. Zackuse*, 250 Mont. 385, 386, 833 P.2d 142, 142 (1991).

¶22 In *Dethman*, the defendant had asserted that his attorney "was not defending him in the manner he felt he needed to be defended because he refused to present witnesses, testimony, and evidence Dethman requested." *Dethman*, ¶ 19. We determined that while Dethman's assertions indicated that he and his attorney "may have had a difference in opinion as how to proceed with Dethman's case, it is a time honored rule . . . that courts must accord great deference to defense counsel's exercise of judgment in determining appropriate defenses and trial strategy." *Dethman*, ¶ 19 (citation and internal quotation marks omitted). Accordingly, we concluded that further investigation by the district court was "unnecessary" and the district court did not abuse its discretion by denying Dethman's motion for substitute counsel. *Dethman*, ¶ 19.

¶23 In contrast, in *Schowengerdt*, we held that the district court failed to conduct an adequate inquiry into Schowengerdt's complaints because it did not give him the opportunity to explain why he was dissatisfied with his attorney. *Schowengerdt*, ¶¶ 18-19. We noted that the court interrupted Schowengerdt whenever he tried to give an explanation, ordered Schowengerdt to follow the Office of the Public Defender's (OPD) process for appointment of new counsel, and failed to conduct further proceedings when OPD administratively denied the request. *Schowengerdt*, ¶ 18.

¶24 Here, the court received Cheetham's letter requesting substitute counsel on the morning of the sentencing hearing. At the beginning of the hearing, prior to conducting any other business, the court addressed the letter. The court began by questioning the

State's counsel about the letter and then questioned Scott, asking him what his thoughts were "procedurally or substantively." Scott responded,

> Your honor, my client does not want me to proceed any further on this case with him as his attorney. He wants me to be removed. He's made it very clear in the letter. We've talked earlier today, civilly, but he's made it very clear that he does not want me to be any further part of this particular case.

.  .  .

> As for the substance of the letters, I am certainly not going to go into that, as that would violate attorney/client privilege under Rule 1.6, so I'm not going to address any of the allegations that are in the letter against me.

Scott also informed the court that Cheetham had begun taking steps to obtain new counsel through OPD. The court agreed that it was unnecessary to "deal with the substance" of the allegations at that time but asked Scott for "more information about [his] thoughts on the potential for a different attorney." The court noted that Scott had described his and Cheetham's discussions as "civil" and thus the court suggested that Cheetham's concerns were "merely a difference of view about how to proceed." Scott agreed with the court's suggestion, stating, "I would believe that could be accurate. I'm not sure if Mr. Cheetham believes that there has been an entire attorney/client relationship breakdown at this point or not." Scott requested that the court continue the sentencing hearing to "see if [Cheetham] can be appointed new Counsel or if he can hire Counsel." The court also questioned Cheetham. Cheetham agreed that he and Scott could communicate civilly but maintained that they disagreed upon the course of action with respect to the medical report.

10

¶25 The court decided to proceed with the sentencing hearing. The court noted that Cheetham's concerns "can best be dealt with or must be dealt with by way of a petition for postconviction relief following an appeal." The court also commented that it had reservations about "whether an attorney should be appointed for Mr. Cheetham different from the able Counsel he has benefited from so far." The court explained that by "able counsel" it meant "that everything the Court has encountered is Mr. Scott has effectively, in the courtroom before the Court, fulfilled his duties properly." Finally, the court expressed reservations about whether it was "permissible for a Defendant to at this stage of the game create a viable basis for a different attorney unless there is a total breakdown of communication between attorney and client."

¶26 We conclude that the District Court's initial inquiry into Cheetham's complaints was adequate. The court questioned both Scott and Cheetham about their attorney-client relationship. Acknowledging that "it would be improper to ask [Scott] to disclose [his] entire defense strategy," *State v. Novak*, 2005 MT 294, ¶ 21, 329 Mont. 309, 124 P.3d 182, the court did not question either Scott or Cheetham about the specifics of the complaint. The court did, however, consider the factual complaints in the letter to conclude that Cheetham and Scott had "a difference of view about how to proceed" with respect to the evidentiary matter raised in Cheetham's letter. Unlike *Schowengerdt*, where the court did not allow Schowengerdt to explain his reasons for requesting new counsel, here, the court read the specific allegations in Cheetham's letter and then questioned Cheetham sufficiently to ascertain that his complaints all were based on

11

Scott's failure to use the medical report. The court considered Cheetham's "factual complaints" in the letter together with "counsel's explanations" addressing the complaints—to the extent that counsel could provide an appropriate explanation at that time without divulging privileged information. *Gallagher*, ¶ 15.

¶27 We acknowledge that a total breakdown of communication may be a separate ground for obtaining new counsel from a claim that counsel is rendering ineffective assistance. The Sixth Amendment right to counsel "'envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *State v. Davis*, 2016 MT 102, ¶ 37, 383 Mont. 281, ___ P.3d. ___ (quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)). Thus, a defendant is "entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063. The District Court's suggestion that a total breakdown of communication was required to obtain new counsel was made with the observation that "at this stage of the game," when all that remained was the sentencing hearing, that was the relevant inquiry.

¶28 Considering the basis for Cheetham's complaints of ineffective assistance, we conclude that the District Court did not err in failing to inquire further. The District Court's initial inquiry is not designed to determine the merits of the claim, but rather "to establish whether a defendant has a substantial claim." *State v. Gazda*, 2003 MT 350, ¶ 32, 318 Mont. 516, 82 P.3d 20. Cheetham did not raise a "seemingly substantial" complaint of ineffective assistance. While Cheetham and Scott "had a difference in

12

opinion as how to proceed with [Cheetham's] case, it is a time honored rule . . . that courts must afford great deference to defense counsel's exercise of judgment in determining appropriate defenses and trial strategy." *Dethman*, ¶ 19. Because the court's initial inquiry did not reveal serious questions as to whether Scott performed the role of counsel envisioned by the Sixth Amendment, it was not required to hold a separate hearing to consider the merits of Cheetham's claims. *MacGregor*, ¶ 26.

¶29 A claim of ineffective assistance based on differences between the defendant and his counsel about trial strategy and production of evidence is available in, and better suited for, a postconviction proceeding where counsel may divulge more freely—with appropriate safeguards (*In re Gillham*, 216 Mont. 279, 282, 704 P.2d 1019, 1021 (1985))—his or her communications with the defendant and strategic decisions. By its terms, the procedure we directed in *Gillham* applies to petitions for postconviction relief when a response from defense counsel is necessary. *Gillham*, 216 Mont. at 282, 704 P.2d at 1021. We have not obligated district courts to compel that procedure prior to entry of final judgment in a criminal case and we decline to impose such a requirement in this case. As such, given the nature of the claims Cheetham raised here, we conclude that further investigation by the District Court was "unnecessary." *Dethman*, ¶ 19. The

District Court did not abuse its discretion by denying Cheetham's request for substitute counsel.[2]

¶30   *2. Whether Cheetham was denied effective assistance of counsel.*

¶31   Cheetham argues that he was denied effective assistance of counsel both pretrial and during trial. Cheetham argues that Scott "failed to [identify], investigate, and introduce at trial" the same allegedly exculpatory medical record about which Cheetham complained to the District Court. Cheetham claims that "[s]uch error was prejudicial as it tended to establish that no penetration or rape took place." Cheetham contends that if the report had been introduced at trial, it would have "undoubtedly affected the jury's consideration of [his] guilt and certainly creates a reasonable probability that the jury would have decided the case differently."

¶32   Cheetham claims that Scott told him that the medical report likely would be inadmissible under Montana's rape shield statute and argues, "Such post-trial justification lacks reasonableness when it is clear Scott was not aware of this information, did not review or investigate further the State's disclosure regarding this information, and did not reasonably attempt to discover the contents of the medical record." Cheetham argues

---

[2] The State urges this Court to adopt the analysis applied by federal courts, which hold that a criminal defendant has a right to new counsel only if the defendant demonstrates good cause such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict, rather than allowing inquiry prior to judgment into counsel's effectiveness. In light of our discussion here, we find it unnecessary to adopt a new standard in this case.

14

further that if Montana's rape shield statute precluded his use of the medical report, Scott should have challenged its constitutionality.[3]

¶33 The alleged error, according to Cheetham, is "firmly based on the record." Cheetham argues that Scott "was given an opportunity to explain or excuse his actions on the record, but declined to do so based on the attorney-client relationship." As such, Cheetham contends, the appropriate procedure should have been for the court to issue a *Gillham* order—which permits a defendant's attorney to reveal confidential information on a claim of ineffective assistance upon court order. Cheetham requests that this Court reverse his convictions and order a new trial, or "[a]t a minimum," that he receive a hearing on his ineffective assistance of counsel allegations.

¶34 The State argues that Cheetham's claim is not record-based and should not be reviewed on direct appeal. The State contends that "[a]lthough the record contains Cheetham's claims about the medical report, it does not contain other information that is necessary to assess Scott's performance." For instance, the State contends that it is "not clear from the record what information Scott had regarding the medical report," whether Scott was "aware of the reference in the CPS report to the medical record," whether he "failed to investigate the reference," "what testimony would have been offered if the medical report had been admitted," or whether "Dr. Salisbury would have testified that the medical findings were inconsistent with N.S.'s allegations against Cheetham." As

---

[3] Cheetham refers to "*State v. James Morris Colburn* (DA 14-0181)," which at the time he filed his Opening Brief was on appeal to this Court. Since that time, however, we decided *State v. Colburn*, 2016 MT 41, 382 Mont. 223, 366 P.3d 258, and did not declare the statute unconstitutional.

15

such, the State argues that Cheetham's claim is more appropriate for a postconviction proceeding and should be dismissed without prejudice.

¶35 "A party may raise only record-based ineffective assistance claims on direct appeal." *Novak*, ¶ 18 (citing *State v. Earl*, 2003 MT 158, ¶ 39, 316 Mont. 263, 71 P.3d 1201). When determining whether an ineffective assistance of counsel claim is appropriate for direct, record-based review, we examine "whether the record discloses why counsel took, or failed to take, action in providing a defense." *Novak*, ¶ 18. "A record that is silent about the reasons for counsel's actions or omissions seldom provides sufficient evidence to rebut the 'strong presumption' that counsel's actions fell 'within the wide range of reasonable professional assistance.'" *Clary*, ¶ 30 (quoting *Sartain*, ¶ 30).

¶36 Here, the record does not fully disclose why Scott failed to investigate or introduce the medical report at trial. While Cheetham, in his letter, contends that Scott decided not to use the report because he believed it is inadmissible under the rape shield statute, because "it's not 100% exculpatory," and because using it would make Cheetham "look even worse like this exam was done then due to suspicion against [him]," Scott himself never discussed the reasons for his decisions or actions with respect to the report. His notice to withdraw the motion to dismiss based on negligent destruction of evidence does not contain any reasoning or explanation, and Scott permissibly did not address the substance of the allegations against him at the sentencing hearing. Because the record is largely silent about the reasons for Scott's actions, there is insufficient evidence to "rebut

16

the strong presumption that [his] actions fell within the wide range of reasonable professional assistance." *Clary*, ¶ 30. Further, there exists at least a plausible justification for Scott's decision. *See Sartain*, ¶ 31. As the State recounts, a "multitude of outside factors" may have led him to decide not to use the medical report. *Sartain*, ¶ 31. Without a fully developed record of Scott's reasons, the issue cannot be resolved and we therefore decline to address it on direct appeal. A postconviction proceeding would allow Scott to explain his tactical decisions. Cheetham's ineffective assistance of counsel claim is therefore dismissed without prejudice to raising it in a postconviction relief proceeding.

## CONCLUSION

¶37 For the foregoing reasons, the District Court's judgment is affirmed.


/S/ BETH BAKER


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT


Justice Laurie McKinnon, specially concurring.

¶38 I write separately with respect to the Court's resolution of Issue 1, believing our analysis to be flawed, our precedent inconsistent, and that a clear and workable standard to be applied at trial should be enunciated. It is unclear to me how the Court can

17

conclude that an "adequate inquiry" was conducted by the District Court without any observation of what the substance of the inquiry entails. Regarding Issue 2, I agree that Cheetham's claim is not record-based and therefore is not reviewable on direct appeal.

¶39 Our precedent informing a trial judge of what standard to employ when presented with a motion for substitution of counsel during trial is confusing, if not impossible to follow. We compound that problem today by continuing to blend an ineffectiveness claim with a substitution claim, despite claiming the two are distinct. Opinion, ¶¶ 14, 27, 28. While our precedent consistently emphasizes the need to conduct an adequate initial inquiry when a motion for substitution of counsel has been made, in my opinion, we have been careless in articulating the standard to be applied by a trial judge in resolving such a motion. In some cases the standard we enunciate requires a "total lack of communication," *Zackuse*, 250 Mont. at 385-86; *State v. Molder*, 2007 MT 41, ¶ 33, 336 Mont. 91, 152 P.3d 722; others a "total lack of communication *or* ineffective assistance of counsel," *Dethman*, ¶ 16 (emphasis added); and still others only an "ineffective assistance of counsel" inquiry, *Gallagher*, ¶ 26, *MacGregor*, ¶¶ 25-26. Today, while claiming to observe a distinction between an ineffective assistance of counsel claim and one grounded in a breakdown of communication between counsel and client, Opinion, ¶ 27, we nonetheless continue to inject *Stickland* standards into a motion for substitution. While precedent regarding ineffectiveness claims informs our understanding of the right to substitution, a judge should not be required to conduct a collateral proceeding during the pendency of a trial, which is more appropriately handled through a postconviction

18

proceeding. Our decision is therefore flawed in that we continue to incorporate the *Strickland* ineffective assistance standard, requiring both deficient performance and prejudice to the defendant, without setting forth any analytical distinction from a substitution claim. However, we then fail to apply the two prong test to the facts, choosing instead to find that Cheetham did not raise a "'seemingly substantial' complaint of ineffective assistance." Opinion, ¶ 28. Under these circumstances, we would be well advised to accept guidance, as the State urges, from the federal courts and enunciate a standard premised upon correct constitutional principles for resolving substitution claims.

¶40 A motion for substitution of counsel is concerned, not with the defendant's freedom of choice or with whether the attorney and client have a "meaningful relationship," *Morris v. Slappy*, 461 U.S. 1, 14, 103 S. Ct. 1610, 1617 (1983), but rather with a breakdown of the attorney-client communication sufficient enough to frustrate the original purpose of the appointment—the mounting of an adversarial defense. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 2554 (1975). "It is that 'very premise' that underlies and gives meaning to the Sixth Amendment. It 'is meant to assure fairness in the adversary criminal process.'" *United States v. Cronic*, 466 U.S. 648, 655-56, 104 S. Ct. 2039, 2045 (1984) (quoting *United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 667 (1981)). The defendant's Sixth Amendment right to substitution of counsel arises because the initial appointment

19

has ceased to constitute Sixth Amendment assistance of counsel. The Sixth Amendment guarantees not simply *counsel*, but "the *Assistance* of Counsel for defense." U.S. Const. amend. VI (emphasis added). "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman . . . requires the guiding hand of counsel at every step in the proceedings against him." *Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64 (1932). Accordingly, where the communication between counsel and defendant has become so compromised that mounting of a defense becomes impossible, the defendant is neither receiving the assistance of counsel nor being heard by counsel.

¶41 The United States Supreme Court has repeatedly held that a defendant's Sixth Amendment right to counsel is violated if the defendant is unable to communicate with his or her counsel during key trial preparation times. *See Riggins v. Nevada*, 504 U.S. 127, 144, 112 S. Ct. 1810, 1820 (1992) (Kennedy, J., concurring) ("We have held that a defendant's right to the effective assistance of counsel is impaired when he cannot cooperate in an active manner with his lawyer. The defendant must be able to provide needed information to his lawyer and to participate in the making of decisions on his own behalf.") (citations omitted); *Cronic*, 466 U.S. at 659 n.25, 104 S. Ct. at 2047 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding."); *Geders v. United States*, 425 U.S. 80, 91, 96 S. Ct. 1330, 1337 (1976) (holding that trial judge's order that counsel could not communicate with defendant

20

during overnight recess in the middle of trial violated defendant's Sixth Amendment right). The Ninth Circuit has similarly recognized that "to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). As the court held in *Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005):

> Where a criminal defendant has, with legitimate reason, completely lost trust in his attorney, and the trial court refuses to remove the attorney, the defendant is constructively denied counsel. This is true even where the breakdown is a result of the defendant's refusal to speak to counsel, unless the defendant's refusal to cooperate demonstrates 'unreasonable contumacy.'

(Citation omitted.)

¶42 Although the Supreme Court has observed that the Sixth Amendment right to the effective assistance of counsel is recognized not for its own sake, but for the effect of the challenged conduct on the reliability of the trial process, there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S. Ct. at 2046. The Supreme Court thus recognized that a per se Sixth Amendment violation may arise where, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60, 104 S. Ct. at 2047.

21

¶43 The test that has emerged within the various federal jurisdictions for substitution motions, which presume prejudice and a per se violation of the Sixth Amendment or "constructive" denial of counsel, is whether an irreconcilable conflict between counsel and defendant, an actual conflict of interest on the part of counsel, or a complete breakdown in communication between counsel and the defendant has occurred.[1] "To warrant substitute counsel, a defendant must show . . . 'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992) (citations omitted), *cert. denied*, 506 U.S. 1011, 113 S. Ct. 632 (1992). *See also United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986), *cert. denied*, 479 U.S. 846, 107 S. Ct. 164 (1986); *United States v. Whaley*, 788 F.2d 581, 583 (9th Cir. 1986), *cert. denied*, 479 U.S. 962. 107 S. Ct. 458 (1986). The test is essentially whether the trial judge should have granted a substitution motion because of an irreconcilable conflict.

¶44 In evaluating whether a court has abused its discretion in denying a substitution request for any of these three reasons, the following facts and circumstances should be considered: timeliness of the motion, adequacy of the court's inquiry into the defendant's complaint, and whether the attorney-client conflict was so great that it resulted in total lack of communication preventing an adequate defense. *Allen*, 789 F.2d at 92; *Whaley*,

---

[1] A conflict of interest warranting substitution requires the defendant to show an actual conflict of interest which adversely affects his lawyer's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 1718 (1980). If there is only a potential for conflict, prejudice is not presumed and a defendant must meet the performance and prejudice standard of *Strickland*. Furthermore, defendants need not show prejudice when the breakdown of a relationship between attorney and client from irreconcilable differences results in the complete denial of counsel. *See Frazer v. United States*, 18 F.3d 778, 785 (9th Cir. 1994).

788 F.2d at 583; *Daniels*, 428 F.3d at 1197-98. It is clear that a conflict over defense tactics and trial strategy could serve as the catalyst leading to a total breakdown in communication or irreconcilable conflict. The inquiry accordingly must focus on whether the serious breakdown in communication results in an inadequate defense and not whether the trial court is of the opinion that defense counsel is competent. Within this framework, the court is not required to inquire of counsel or defendant regarding issues of trial strategy or matters protected by the attorney-client privilege, except to the degree they may have resulted in an irreconcilable breakdown in communication between attorney and client.

¶45   Based on the foregoing, I cannot agree that the Court's analysis dispenses with the need to adopt a clear standard regarding the substance of the inquiry as the federal courts have. Opinion, ¶ 29 n.2. In my opinion, it is a mistake to continue to blend an ineffectiveness claim under *Strickland* with a request for substitution of counsel and, in doing so, we have perpetuated confusing precedent when given the explicit invitation from the State to provide clarity. I would accordingly set forth a standard warranting substitution of counsel when there is an irreconcilable conflict between counsel and defendant, a conflict of interest on the part of counsel, or a complete breakdown in communication between counsel and the defendant. In evaluating whether a court has abused its discretion in denying a substitution motion, the following circumstances are relevant: the timeliness of the motion, the adequacy of the court's inquiry, and the degree to which the irreconcilable conflict has prevented the mounting of an adequate defense. I

believe such a standard is premised upon sound constitutional principles underlying the Sixth Amendment and Supreme Court precedent.

¶46 As the District Court actually determined that there was "no total breakdown of communication" between attorney and client, I believe the court employed the correct analysis and would affirm.

/S/ LAURIE McKINNON